UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2005 FEB 15 P 4: 12

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| DENNIS J. SOLOMON, | Plaintiff, | Civil Action No. 04-12499WGY |
| v. | | |
| CHARLES VEST, *et al.*, | Defendants. | |

## MEMORANDUM IN SUPPORT OF THE MOTION OF THE DEFENDANT MASSACHUSETTS INSTITUTE OF TECHNOLOGY TO DISMISS THE PLAINTIFF'S COMPLAINT

The defendant Massachusetts Institute of Technology (MIT) submits this memorandum in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the plaintiff's claims against MIT on the grounds of res judicata and failure to make specific factual allegations against MIT.

The plaintiff, Mr. Solomon, has filed a prolix and largely incomprehensible complaint against MIT, two of its employees (Dr. Charles M. Vest, its former President, and Lita Nelsen, the Director of its Technology Licensing Office), 41 other named defendants, and either 10 (in the heading of the Complaint) or 25 (in the body of the Complaint (¶ 35)) Jane and John Does. Of the three MIT defendants, only the corporate entity MIT has been served, and the motion to dismiss has therefore been filed only by MIT.

### Background

The Complaint before this Court (the Massachusetts Complaint) asserts twelve counts claiming noninfringement and patent invalidity, abuse of process, fraud,

conspiracy, antitrust, extortion, interference with advantageous relationships, breach of contract, bribery, commercial disparagement, RICO violations, and Lanham Act violations by various individual defendants or groups of defendants.

Certain counts in the Massachusetts Complaint might be read to refer in their headings to all of the defendants, and therefore to include MIT (Count III (p. 5) ("et al [*sic*]"), first Count V (p. 11) ("Et Al [*sic*]"), second Count V (p. 12) ("Et Al [*sic*]"), first Count VI (p. 13) ("All Defendants"), Count VIX [*sic*] (p. 16) ("All Defendants"), third Count VI (p. 16) ("All Defendants"), and Count VII (p. 17) ("All Defendants")).[1]  But only the second Count IV (p. 15) identifies MIT by name.  The allegations regarding MIT in that second Count IV refer to MIT allegedly licensing, and then wrongfully terminating, the so-called "Kollin patent" to Mr. Solomon and his company, Volumetric Imaging, Inc. (¶¶ 163 and 166).

In March 1998 Mr. Solomon and HoloDeck Trust filed an action in the United States District Court for the Western District of Washington, *Solomon v. University of Washington, et al.* (No. C98-258L), against MIT and ten other defendants.  The form of the plaintiffs' Complaint in that action that was served on MIT is annexed to this Memorandum as Attachment A (the Washington Complaint).  The Washington Complaint alleged five counts of conspiracy, RICO, antitrust, extortion, and interference with advantageous relationships claims.

All of the counts in the Washington Complaint referred in their headings to defendants generally, and therefore could have been read to include MIT (Count I (p. 16)

---

[1] Count I (p. 8), Count II (p. 9), the first Count IV (p. 11), and the second Count VI (p. 13) refer only to specifically-named defendants (not including MIT), with no generic references to "*et al.*"

("Defendants"), (Count II (p. 17) ("Defendants"), (Count III (p. 17) ("Defendants"), (Count VI [*sic*] (p. 18) ("Defendants"), and (Count V (p. 19) ("Defendants"). But only Count V (p. 19) mentioned MIT by name. The allegations regarding MIT in that Count V referred to its alleged licensing, and then wrongful termination, of the so-called "VI-MIT patent" (¶ 61). That patent was described earlier in the Washington Complaint as the Kollin patent, licensed to Volumetric Imaging, Inc., by MIT (¶ 29).

MIT moved for summary judgment on the Washington Complaint. In the Report and Recommendation of the Magistrate Judge dated February 12, 2000 (a copy of which is annexed to this Memorandum as Attachment B), the Magistrate Judge recommended that all of the counts against MIT be dismissed with prejudice (pp. 9, 12-13, 14, 17, and 19). By order dated April 7, 2000 (a copy of which is annexed to this Memorandum as Attachment C), the District Court adopted the Report and Recommendation of the Magistrate Judge, granted summary judgment to MIT (¶ 2), and dismissed the plaintiffs' action with prejudice (¶ 5). Judgment on that basis was entered on April 14, 2000 (a copy of the final judgment of the District Court is annexed to this Memorandum as Attachment D). On appeal, the Ninth Circuit summarily affirmed the judgment of the District Court on July 20, 2001 (a copy of the opinion is attached to this memorandum as Attachment E). On January 3, 2002 the Ninth Circuit issued a Mandate affirming the District Court (a copy of the judgment of the Ninth Circuit is annexed to this Memorandum as Attachment F).

---

or "defendants."

## Argument

The plaintiff's Complaint before this Court obviously fails to satisfy the requirement of F.R. Civ. P. 8(a) that it contain a "short and plain statement of the claim showing that the pleader is entitled to relief" from MIT.

But MIT wishes to make it emphatically clear to this Court that MIT is not seeking dismissal of the plaintiff's Complaint on that ground. Nor is MIT asking this Court to allow the plaintiff another opportunity to elaborate on his convoluted conspiratorial theories. In the Washington action, the civil docket (a copy of which is annexed to this Memorandum as Attachment G) extended for four years, with 176 separate entries. MIT urges the Court to dismiss the plaintiff's Complaint against MIT at the outset of this action, and thereby to avoid any further waste of judicial resources and of MIT charitable funds in a futile attempt to shape the plaintiff's allegations into cognizable legal claims.

The Court has a sound basis for such a dismissal for the two reasons set out in this memorandum: all of the counts in the plaintiff's Massachusetts Complaint that could possibly be read to refer to MIT should be dismissed on the ground that they were determined, or could have been determined, in the Washington action, and therefore are barred by the doctrine of res judicata; [2] in addition, the counts in the plaintiff's Massachusetts Complaint that do not refer specifically to MIT should also be dismissed

---

[2] A motion to dismiss pursuant to F.R. Civ. P. 12(b)(6) is an appropriate vehicle for raising a res judicata defense, because "matters of public record are fair game in adjudicating Rule 12(b)(6) motions." *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 16, 19 (1st Cir. 2003). *See also Boateng* v. *InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000).

because they fail to make the specific factual allegations against MIT that are required to
state a claim.

**I.     THE ONE COUNT IN THE PLAINTIFF'S COMPLAINT THAT REFERS
TO MIT SPECIFICALLY, AS WELL AS ALL OF THE COUNTS THAT
REFER GENERICALLY TO "DEFENDANTS" OR "*ET AL.*," SHOULD
BE DISMISSED BECAUSE THEY ARE BARRED BY RES JUDICATA.**

'"Under res judicata, a final judgment on the merits of an action precludes parties
or their privies from relitigating issues that were or could have been raised in that
action.'" *Massachusetts Sch. of Law at Andover, Inc.* v. *American Bar Ass'n*, 142 F.3d
26, 38 (1st Cir. 1998) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

When the first lawsuit and the second potentially-precluded lawsuit are both
litigated in federal court, the Court should look to federal law to assess the res judicata
effect of the first judgment.  142 F.3d at 37.  The elements of res judicata (also referred to
as "claim preclusion") under federal law are '"(1) a final judgment on the merits in an
earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier
and later suits, and (3) sufficient identicality between the parties in the two suits.'" *Id.*
(quoting *Gonzalez* v. *Banco Central Corp.*, 27 F.3d 751, 755 (1st Cir. 1994)).  Under this
formulation by the First Circuit of the requirements for a finding of res judicata, the
plaintiff's claims against MIT in the Massachusetts action are precluded by the prior
judgment in the Washington action.

The first element for a finding of res judicata is that there have been a final
judgment on the merits in the previous action.  The First Circuit and a majority of other
courts have held that "summary judgment is a final judgment on the merits to which res
judicata effect can be afforded." *Lynch* v. *Board of State Exam'rs of Electricians,* 218 F.
Supp. 2d 3, 7 n.8 (D. Mass. 2002) (citation omitted).  In this case, the United States

District Court for the District of Washington granted summary judgment for MIT, and that judgment was affirmed by the Ninth Circuit. Therefore, under the settled precedent in this Circuit, a final judgment on the merits was reached in the earlier action, and the first element for a finding of res judicata is satisfied.

The second element that must be present for res judicata to apply is that there be sufficient identicality between the causes of action in the two actions. In determining whether the causes of action are sufficiently identical, the First Circuit uses a "transactional approach." Under this approach, the issue is "whether the causes of action arise out of a common nucleus of operative facts." *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Association*, 142 F.3d 26, 38 (1st Cir. 1998). To make that determination a Court is to ask "'whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" *Id.* (quoting *Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 6 (1st Cir. 1992), quoting in turn Restatement (Second) of Judgments § 24 (1982)).

In this case, the only factual allegation in the Massachusetts action that specifically mentions MIT in connection with any claim is that MIT allegedly licensed, and then wrongfully terminated, the so-called "Kollin patent" to Mr. Solomon and his company, Volumetric Imaging, Inc. (the second Count IV, ¶¶ 163 and 166). That factual allegation is identical to the one in the Washington action that MIT licensed, and then wrongful terminated, the so-called "VI-MIT patent" (Count V (¶ 61), which is described earlier in the Washington Complaint as the Kollin patent, licensed from MIT to Volumetric Imaging, Inc. (¶ 29)). As a result, all of the facts in the Washington and

Massachusetts actions are related in time, space, origin, and motivation, the actions would form a convenient trial unit, and MIT (at least) would expect that the claims would be brought together.

To the extent that other counts in the Massachusetts Complaint that refer generically to the "defendants" or "*et al.*" could be also read to include MIT, and therefore to assert other theories of liability against MIT,[3] the res judicata effect of the Washington action is the same. Res judicata bars "different theories of recovery, howsoever prolific, . . . if, and to the extent that, all such theories concern 'the same operative nucleus of fact.'" *Kale* v. *Combined Insurance Co. of America*, 924 F.2d 1161, 1166 (1st Cir. 1991) (quoting *Lovely* v. *Laliberte*, 498 F.2d 1261, 1263 (1st Cir. 1974)). As the First Circuit explained,

> [i]n this way, the law prevents a litigant from claim-splitting, requiring that he "assert all his various legal theories and factually related allegations the first time he brings suit."

*Id.* (quoting *Rose* v. *Town of Harwich*, 778 F.2d 77, 79 (1st Cir. 1985)). *See also Isaac* v. *Schwartz*, 706 F.2d 15, 17 (1st Cir. 1983) (the fact the plaintiff "asserts new legal theories, embodied in different statutes and different common law doctrines, does not help him," and "[m]inor factual variations . . . are beside the point").

The second element for a finding of res judicata is therefore also satisfied in this case.

The third and final element of res judicata is that there is sufficient identicality between the parties in the two actions. Mr. Solomon and MIT were both named parties in

---

[3] For the reasons stated in the second argument in this memorandum (*see* pp. 8-9, below), those counts should be dismissed for an alternative reason, because they in fact fail to plead any

the prior Washington action and are named parties in the present Massachusetts action.[4]

Those facts satisfy the requirement that there be identicality between the parties, so that

the third and final element for a finding of res judicata is satisfied in this case.

Because all three of the requirements for issue preclusion are satisfied in this case,

the Court should dismiss Count III (p. 5), the first Count V (p. 11), the second Count V

(p. 12), the second Count IV (p. 15), the first Count VI (p. 13), Count VIX (p. 16), the

third Count VI (p. 16), and Count VII (p. 17) on the ground of res judicata.

## II.    ALL OF THE PLAINTIFF'S COUNTS THAT REFER GENERICALLY TO "DEFENDANTS" OR "*ET AL.*" SHOULD ALSO BE DISMISSED AGAINST MIT BECAUSE THE PLAINTIFF FAILED TO PLEAD ANY FACTS IN THOSE COUNTS THAT RELATE SPECIFICALLY TO MIT.

General claims in pleadings must be supported by specific factual allegations.

*Fleming* v. *Lind-Waldock & Co.*, 922 F.2d 20, 23-24 (1st Cir. 1990).  In considering a

motion to dismiss, a Court may not rely on unsupported conclusions.  *Educadores*

---

specific facts regarding MIT.

[4] Dr. Vest and Ms. Nelsen, the other parties affiliated with MIT (*see* p. 1, above), have not been served in the Massachusetts action, and therefore are not parties to this motion.  But if they had been served, the preclusive effect of the prior Washington judgment would have extended to them, as well.  Although they were not named parties in the Washington action, there is sufficient identicality, by virtue of privity, between them and MIT.  In a recent case from the United States District Court of Connecticut, that Court faced a nearly identical fact pattern.  *Tibbetts* v. *Stempel*, No. Civ. A.3:97 CV 2561, 2005 WL 165316 (D. Conn. Jan. 20, 2005).  In that case Yale University, the Yale Corporation, and certain employees and officials of the University were sued.  *Id.* at *1.  The defendants alleged that the plaintiff's claims were barred by the doctrine of res judicata.  *Id.* at *5.  The Court assessed whether there was privity between the parties in the two actions.  *Id.* at *7.  While the Yale Corporation was a defendant in both actions, the President of Yale and other officials and employees were only defendants in the second action.  *Id.* at *8.  The Court nevertheless concluded that the connection between the officials and other employees of Yale and the Yale Corporation itself was sufficiently close to establish privity.  *Id.*  Similarly, in this case, although Dr. Vest and Ms. Nelsen were not named parties in the Washington action, they are sufficiently related to MIT that the test of identicality between the parties in the two actions would have been satisfied.  They too would therefore have been entitled to judgment on account of res judicata, had they been served and become parties in this action.

- 8 -

*Puertorriquenos en Accion* v. *Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) (citing

*Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)).

When no specific facts have been asserted against a particular defendant, the

claim cannot stand. *Mooney* v. *Clerk of Courts*, 831 F. Supp. 7, 10 (D.N.H. 1993). In

words that could have been written for the case before this Court, a Magistrate Judge in

*Ducally v. Rhode Island Dep't of Corrections*, 160 F. Supp. 2d 220, 228-29 (D.R.I.

2001), concluded as follows:

> [P]laintiff's complaint states *no* facts that would implicate Defendant
> Gardner. Specific factual allegations against Defendant Gardner are
> completely absent from the plaintiff's complaint. Accordingly, I
> recommend that the defendants' motion to dismiss, pursuant to
> Fed.R.Civ.P. 12(b)(6), should be granted as it pertains to Defendant
> Gardner.

Even a *pro se* plaintiff must set forth a factual basis for the asserted claims. *See id.*

This Court should therefore dismiss as against MIT all of the Counts that refer

generically only to the "defendants" or "*et al.*" (Count III (p. 5), the first Count V (p. 11),

the second Count V (p. 12), the first Count VI (p. 13), Count VIX (p. 16), the third

Count VI (p. 16), and Count VII (p. 17)), because none of them makes any specific

allegation concerning MIT.

## Conclusion

For the reasons set out in this memorandum, the Court should dismiss the plaintiff's complaint against MIT.

Respectfully submitted,

Jeffrey Swope (BBO No. 490760)
Kara A. Krolikowski (BBO No. 658160)
PALMER & DODGE LLP
111 Huntington Avenue
Boston, Massachusetts 02199
(617) 239-0100

February 15, 2005

### CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the plaintiff by mail by causing it to be deposited with the United States Postal Service on February 15, 2005.

- 10 -

1

2                      UNITED STATES DISTRICT COURT

3                     FOR THE DISTRICT OF WASHINGTON

4

5  Dennis J. Solomon                    )
   HoloDeck Trust                       )
6          Plaintiffs,                  )
       vs.                              )
7                                       )
   Microvision                          )
8  University of Washington             )  Case No.: C98 - 0258 D
   Joel Kollin                          )
9  Thomas Furness                       )
   MIT                                  )
10 Jean Weidemier                       )
   Teledyne Display Technologies        )
11 William Kennedy                      )
   Brian Hart                           )
12 Altman Stage Lighting Company        )
   Morris Weinberg                      )
13         Defendants.                  )

14

15

16                     PRELIMINARY STATEMENT

17        The present case avers that the defendants, with a locus about

18 defendant Joel Kollin have and are engaged in a series of interstate

19 conspiracies to obtain the trade secrets of the plaintiff, a former

20 MIT student and researcher. Using the unlawfully obtained information,

21 the defendants have and are continuing to engage in a unlawful

22 combination and conspiracy to monopolize, interfere with, and restrain

23 interstate commerce and competition through acts of fraudulent U.S.

24 patent and government contract procurement, interference with business

25 relations, and intimidation, extortion, physical attacks of persons

   and property of the plaintiff and other unfair competitive practices.

1

1  Further, the defendants have been unjustly enriched through these
2  unlawful activities, by fraudulently promoting and issuing interstate
3  securities based on the fraudulently procured inventions, thereby
4  establishing a corporate market value of in excess of $80,000,000 and
5  soliciting U.S. government contracts in excess of $2,300,000.

6      The plaintiff, Dennis J. Solomon, a research biological
7  microscopist at MIT beginning in 1977, independently developed a
8  series of inventions in the field of visual imaging.  In the early-mid
9  1980s, these inventions came to the attention of research groups
10 including the air tactics group of Naval Air Station, Weymouth, MA and
11 USAF Rome Labs, NY., and the  holographic imaging group at the Media
12 Lab, MIT under Stephen Benton.

13     In the mid 1980s, defendant Kollin became a member of Benton's
14 Lab at MIT.  Subsequently, a number of incidents occurred involving
15 the theft, copying or removal of the plaintiff's invention papers, and
16 the monitoring of plaintiff's business contacts.

17     During the past thirteen years, defendants Altman, Kollin and
18 other persons known but unidentified by name, have engaged in a
19 conspiracy to unlawfully monopolize scanning stage and imaging systems
20 by using a series of schemes to obtain the plaintiff's trade secrets,
21 and by using intimidation, extortion, and threats of personal injury
22 to obtain the assignment of U.S. patents and impede interstate
23 commerce and competition.

24     During the past ten years, defendants Kollin and Furness, using
25 unlawfully obtained trade secrets, have fraudulently procured four
   U.S. patent applications which read closely on plaintiff's earlier

1   filed applications.    At least two of the applications are invalid
2   under the prior art and issued as a result of a clerical error by the
3   U.S. Patent Office for failing to assign an earlier application filing
4   date to a subsequent continuation-in-part.

5        From 1992 to the present, the defendants Kollin, Weidemier,
6   Teledyne, Kennedy and Hart formed a conspiracy to interfere with a
7   settlement license over fraudulently procured U.S. Patent '769 between
8   the plaintiff and MIT.    In 1995, the defendant Teledyne sought to gain
9   monopolistic control over patent '769, and knowingly interfered with
10  the business relationship between the plaintiffs and the U.S.
11  Department of Defense by delaying and failing to provide contracted
12  electronic components.

13       The defendants Kollin, Furness, University of Washington and
14  Microvision formed a second conspiracy to engage in unlawful
15  monopolistic practices and unlawfully enrich themselves by
16  fraudulently procuring at least two U.S. patents '104 & '339, based on
17  the plaintiff's inventions.    The defendants used these patents as the
18  foundation for the promotion of the registered securities of
19  Microvision, Inc., a State of Washington corporation currently listed
20  on the NASDAQ, and to obtain government contracts.

21       The aforementioned acts are violations of Section 2 of the Sherman
22  Act (15 USCS § 2) and Section 1964 of the RICO Act (15 USCS 1964) as well as
23  numerous US and State laws.

24       Prior to the institution of this complaint, the plaintiff attempted to
25  reach a mediated settlement with Microvision and requested a notarized

3

1   statement under penalties of perjury from defendant Kollin denying the
2   specific allegations. Both parties rejected these requests.

3

4                                COMPLAINT

5   1. Plaintiffs, bring this civil action against defendants under Section
6       2 of the Sherman Act (15 USCS § 2), the RICO Act (15 USCS 1964) and
7       other State and Federal laws, for treble damages suffered by the
8       plaintiffs as a result of violations by the defendants of the
9       antitrust and corrupt organization laws of the United States.
10      Plaintiff demands a jury trial.

11

12                          JURISDICTION AND VENUE

13  2. This Court has jurisdiction of this cause under the provisions of
14      the Sherman and Clayton Acts, specifically under 15 USC § 1 & 2, 28
15      USC § 1338 and venue under 28 USC § 1400(b) and 1391(c).

16

17                                PARTIES

18  3. The plaintiff, Dennis J. Solomon, is a resident of Yarmouth Port,
19      Massachusetts.  He received his formal education at MIT and the
20      Woods Hole Marine Biological Laboratories in the fields of optical
21      microscopy.  In 1978 and 1979, he co-authored a number of scientific
22      articles with Dr. Stephanie Sher, the wife of Dr. Larry Sher,
23      inventor of BBN's SpaceView, a 3D variable focus scanning display.
24      During the 1980s, Solomon continued to experiment and invent in the
25      field of visual science.   In 1989, Solomon founded Volumetric
        Imaging, Inc.  During or before 1991, he began exploring joint

4

1   projects with ISCAN, a manufacturer of head-mounted, eye tracking
2   systems.

3   4. The plaintiff, HoloDeck Trust is an unincorporated association of
4   parties who have been granted a beneficial interest in the imaging
5   projects of plaintiff Solomon.

6   5.   The defendant, Joel S. Kollin, is believed to be a resident of
7   Seattle, Washington.  He is believed to be an employee of the HITL
8   Laboratory of the University of Washington, and to have received and
9   currently have a beneficial financial interest through the licensing
10  of said patents covering virtual retinal displays to and through an
11  equity interest in Microvision, Inc., and an assignment agreement
12  with University of Washington.

13  6. The defendant, Thomas Furness, is believed to be a resident of
14  Seattle, Washington, and an employee of the HITL Laboratory of the
15  University of Washington. He is believed to have received and
16  currently have a beneficial financial interest in the licensing of
17  patents  covering  virtual  retinal  displays,  and  through  the
18  interstate securities sales of equity in Microvision, Inc., and an
19  assignment agreement with University of Washington.

20  7. The defendant, University of Washington, hereinafter called "HITL",
21  is believed to be a non-profit, educational institution situated in
22  Seattle, Washington and organized under the Laws of the State of
23  Washington.  The University is believed to operate a for-profit
24  licensing agency which distributes license fees to the University
25  and the inventors of record.

5

1   8. The defendant, Microvision, Inc., hereinafter called "Microvision",

2     is believed to be a public Washington corporation traded on the

3     NASDAQ under the symbol MVIS, with principal offices at 2203 Airport

4     Way South, Seattle, Washington.  It is believed that defendants

5     Furness and Kollin participated in the development and promotion of

6     Microvision and received financial and other benefits from the

7     $5,000,000 licensing agreement of virtual retinal patents with the

8     University of Washington.

9   9. The defendant, Jean Weidemier, is believed to be a resident of

10    Massachusetts and was formerly employed as an attorney by the

11    Massachusetts Institute of Technology.  Weidemier specifically

12    negotiated and composed the specific licensing agreement for the

13    Kollin Patent '769 between MIT and Solomon executed on April 22,

14    1992.

15   10.   The defendant, Massachusetts Institute of Technology, hereinafter

16    called "MIT", is a private, non-profit, educational institution

17    incorporated under the Laws of Massachusetts with principal offices

18    at 77 Massachusetts Avenue, Cambridge, Massachusetts.  MIT was

19    assigned the Kollin '769.

20   11.   The defendant, Teledyne Display Technologies, Inc., hereinafter

21    called "Teledyne", is believed to a New Hampshire corporation, a

22    subsidiary of Teledyne, Inc., engaged in the manufacture and sale of

23    LED display systems with principal offices at ****************.

24   12.   The defendant, William Kennedy, is believed to a California

25    resident, was an employee of Teledyne, Inc., contacted and conspired

1    with both Teledyne Display Technologies and Brian Hart in connection
2    with US Patent '769.

3    13.    The defendant, Brian Hart, is believed to be a California
4    resident and to have received assistance and support from Teledyne
5    for the development of a volumetric imager in competition with the
6    plaintiffs.   Brian Hart visited MIT in an attempt obtain a license
7    from MIT on patent '769.

8    14.    The defendant, Morris Weinberg, is believed to a resident of
9    Cambridge and Centerville, Massachusetts and owner of America Now, a
10   technology development company. Weinberg was the president of
11   Fibronics International, Inc. of Hyannis until his removal in 1988.

12

13                              UNLAWFUL ACTS

14   15.    Beginning in 1986 and continuing up to including the date of
15   filing of this complaint, the defendants have monopolized and
16   attempted to monopolize the interstate trade and commerce in low
17   inertial visual scanning systems, autostereoscopic systems and
18   retinal imaging systems using scanning system, in violation of
19   Section 2 of the Sherman Act (15 USCS § 2), Section 1962 of the RICO
20   Act (18 USCS § 1962)and Section 42 of Trade Act of the Commonwealth
21   of Massachusetts on Trade Secrets (93 MGL § 92).   Such violations
22   are continuing and will continue unless relief hereinafter requested
23   is granted.

24   16.    Pursuant to and in furtherance of the aforesaid monopolization,
25   attempt to monopolize, and other unlawful acts and practices,
     defendants have engaged in a ongoing series of schemes and

                                    7

1    conspiracies that has prevented competing inventors and

2    organizations in the field of retinal imaging systems for having an

3    adequate opportunity effectively to compete for business and

4    government contracts, and has done, among other acts the following:

5    (a) During a period from at least May, 1983 and continuing to the

6    present, persons known to or associated with Katherine Hahn, in

7    coordination with persons connected in part to Alan B. Morse,

8    Altman's and a MIT group associated with Kollin, engaged in a

9    conspiracy to obtain the trade secrets of the plaintiff included in

10   part in continuation-in-part application of U.S. Patent application

11   06/699,905, filed February 8, 1985.

12   (b) Defendant Kollin received this and other information and used

13   said unlawfully obtained information to fraudulently procure U.S.

14   Patent 4,853,769, filed June 16, 1987.

15   (c) On or about the winter of 1987-88, Altman invited plaintiff to

16   attend an album release party for music star Cyndi Lauper at a

17   Yonkers nightclub.  The plaintiff was introduced to a well-dressed

18   advertising account associate, Michot (last name unknown), who

19   accompanied the plaintiff to a private reception at the Altman

20   facility.  During negotiations related to the agreement of

21   assignment of the plaintiff's patents '568 to defendant Altman,

22   Randall Altman with affirmation from Elie Altman, suggested that

23   said woman was under legal age and pictures of the plaintiff leaving

24   the facility had been taken.  Plaintiff had had no contact with said

25   woman subsequent to said reception and had no independent knowledge

     of the veracity of defendants' assertion.

8

1  (d) On or about the spring of 1988, defendant Kollin published and
2  publicly presented at the scientific meeting, the subject matter of
3  autostereoscopic patent '769;

4  (e) On or about the summer of 1991, the plaintiff noted unauthorized
5  access by persons known and unknown of the plaintiff's files, mail,
6  and computer materials at plaintiff's office at 2200 One Kendall
7  Square;

8  (f) Defendants Kollin and Furness used said unlawfully-obtained
9  information to fraudulently procure U.S. Patent 5,467,104, filed
10  October 22, 1992;

11  (g) Defendant Teledyne, cognizant and desirous of obtaining control
12  of Kollin AS patent '769, knowingly and deliberately delayed
13  providing certification of performance characteristics in LED
14  modules contracted to VI in which plaintiff had a beneficial
15  interest and was believed to derive personal income.  Defendant
16  Hart, in conspiracy with defendant Teledyne, attempted
17  unsuccessfully in May, 1994 to obtain a license from MIT over the
18  patents licensed to VI.  Thereafter, in furtherance of said
19  conspiracy, defendant Teledyne knew and believed that said delay of
20  such certification would effectively put plaintiff in financial
21  straits and reputation with the U.S. government, jeopardize existing
22  government contracts, and cause the plaintiff to lose its
23  competitive advantage including but not limited to Kollin MIT patent
24  licenses .

25  (h) On or about the winter of 1994-95, the plaintiff noted
unauthorized access by persons known and unknown of the plaintiff's

1   files, mail, and computer materials temporarily housed at 110
2   Sherman Ave, Chestnut Hill, MA, an apartment complex indirectly
3   controlled by Alan B. Morse, uncle of Hahn.  Defendant Weinberg, in
4   conspiracy with Morse, and on behalf of Kollin and other defendants,
5   had demanded a upfront payoff of $50,000 to do business with the US-
6   Israel Bilateral Science Grants, and when the plaintiff refused to
7   pay upfront, did and continues to engage in a unlawful enterprise to
8   obtain trade secrets and interfere with business relations.  Among
9   other acts, Weinberg instructed his associate, Emily Shain, to
10  attempt to obtain the plaintiff's latest improvements of the Kollin
11  Patent '769 and forward them to the Publicity Department of Reebok
12  International run by Weinberg's son, Adam.
13  (i) Defendant Furness used said information unlawfully obtained to
14  fraudulently procure U.S. Patent 5,596,339, filed May 9, 1995;
15  (j) Defendants Microvision, Furness, Kollin & University of
16  Washington, cognizant of the claims of the plaintiff and the Notice
17  of Allowance '066 (see exhibit 1) fraudulently and unfairly procured
18  contracts with the U.S. government including but not limited to a
19  contract for $4,000,000 with the U.S. Army.
20  17.  Section 42 of the Massachusetts General Laws, Chapter 93 (93 MGL
21  § 42) states in part that: "Whoever embezzles, steals or unlawfully
22  takes, carries away, conceals, or copies, or by fraud or by
23  deception obtains, from any persons or corporation, with intent to
24  convert to his own use, any trade secret, regardless of value, shall
25  be liable in tort to such person or corporation for all damages
    resulting therefrom."

10

1  18.    United States Letters Patent No. 4,253,769; 5,467,104; 5,569,339
2     are invalid and void for the reasons that the applicants did not
3     themselves invent the subject matter sought to be patented.

4

5                              BACKGROUND FACTS

6  19.    During the early winter of 1979-80, Charles Szabo, M.D., a
7     professor at Harvard Medical School and Vivian Moss, a television
8     producer for The Body Human, funded by the Discover arm of Robert
9     Guccione, approached plaintiff through his lab at MIT to film for
10     television footage using photomicrography of human biological
11     specimens.   The footage appeared in a CBS Science series.   Of
12     particular interest to Moss were methods of microscopic and
13     endoscopic imaging.

14  20.    In 1981, a M. Landsman, part of a University of Rochester-MIT-
15     Vermont technology group, expressed an interest in developing
16     certain 3D inventions of the plaintiff.   Certain technologies of
17     plaintiff were transferred to parties associated with Dimension
18     Technologies, Inc and the US Air Force, Rome Labs.   No direct long-
19     term project evolved.

20  21.    During the early winter of 1983-84, MIT associates of Stephen
21     Benton, a professor of spatial imaging at MIT, invited plaintiff to
22     a Benton lecture at the Cambridge Academy of Arts & Sciences.
23     Plaintiff was seated next to Benton's wife, who engaged him in
24     conversation concerning his activities.   Following the lecture,
25     Benton, associates and Plaintiff engaged in further conversations
       during which the associates repeatedly attempted to induce Plaintiff

                              11

1   to discuss in depth he presented work related to 3D holographic
2   television.

3   22.   In 1984, Plaintiff presented an idea for a computer-generated,
4   holographic, stage backdrop for a music production. The backdrop
5   proposed was a matrix panel constructed of holographic "pixels",
6   each being a printed, computer-generated hologram.  The concept was
7   presented to a number of music groups but was considered too
8   expensive at the time.  Also in 1984 or thereafter, Plaintiff was
9   asked to present his idea for a 3D holographic backdrop to Altman
10   Stage Lighting Company.  Certain associates of Altman's from
11   Seattle, Washington with a direct and specific interests in
12   Plaintiff's inventions met with Plaintiff at the Altman Yonkers, NY
13   facility.

14   23.   During 1986, Plaintiff filed a U.S. Patent C-I-P application of
15   '905 related the integration of autostereoscopy, holography and
16   volumetric imaging.  The application disclosed that the "concepts
17   could be applied to limited field-of-view displays".

18   24.   In the late fall of 1986, Plaintiff met Katherine Hahn of New
19   Haven, CN.  Members of Hahn's family were involved in 3D virtual
20   reality and stage lighting at Litton Fairchild in Florida and
21   Connecticut.  Alan B. Morse, Hahn's uncle, was the President of the
22   US Trust Company of Boston, a major Somerville, MA bank, had a few
23   years earlier opposed the US Trust's participation in the
24   plaintiff's imaging project, and was secretly attempting to wrest
25   control of US Trust from certain friendly acquaintances of the

1  plaintiff. Certain associates of Hahn were active in the imaging
2  field in Seattle, Washington.

3  25.   During December, 1986, following a meeting with Plaintiff's
4  patent advisors, Hahn invited Plaintiff to a party in Somerville,
5  Massachusetts. In attendance were business associates in the field
6  of architecture and photography. Plaintiff fell asleep during the
7  party. During January, 1987, it became apparent that certain
8  information related to Plaintiff's pending applications had been
9  removed. Plaintiff confronted Hahn, who claimed to have no
10  knowledge of any specific related acts.

11  26.   During 1988, Plaintiff filed an action against Hahn in
12  Massachusetts District Court. Hahn did not deny the allegations.
13  The court awarded Plaintiff damages and injunction against further
14  unlawful activities by Hahn and associates.

15  27.   In 1987, Kollin, then of Somerville, Massachusetts, and connected
16  to the laboratory of Benton at MIT filed a patent application
17  entitled "Time-Multiplexed Autostereoscopic Display", now U.S.
18  Patent 4,853,769. The first claim, related to the integration of
19  volumetric imaging and autostereoscopic displays, presented a narrow
20  case of Plaintiff's earlier filed 1986 application 06/699,905.

21  28.   On October 10, 1991, Plaintiff filed U.S. patent application no.
22  07/779,066 entitled "Stereo Visual Display System with Scanning
23  Focal Adjustment" hereinafter called the "Plaintiff First
24  Application" (see Exhibit 1).

25  29.   On or about the spring of 1992, the Kollin patent, #4,853,769,
   filed in 1987 and publicly presented at the SID meetings in 1988,

13

1   remained unlicensed. Plaintiff inquired about obtaining an
2   exclusive license. Plaintiff was directed to Attorney Weidemier of
3   MIT. Ms. Weidemier attempted to delay the licensing on at least two
4   occasions. During the summer of 1992, after negotiations related to
5   the various claims and actions, MIT licensed the Kollin patent
6   exclusively to Volumetric Imaging, Inc. An agreement was later
7   reached which permitted the transfer to Dennis J. Plaintiff or
8   another group in which he was involved.

9   30.   During late 1991, Plaintiff began developing a project with
10  ISCAN, a Massachusetts manufacturer of eye position detector
11  systems.

12  31.   On October 22, 1992, Furness and Kollin filed a US patent
13  application for a "Virtual Retinal Display", now U.S. Patent
14  5,467,104, issued 11/14/95.

15  32.   Both the Plaintiff's earlier '066 (1991) and the Furness (1992)
16  applications disclose a source of photons scanned directly onto the
17  user's retina and a means for varying the focus of said scanned
18  photons to control the depth perceived for each picture element from
19  infinity to an arbitrary close distance, and constitutes prior
20  pending art to the Furness application.

21  33.   On March 9, 1993, Plaintiff's application, US Patent Appl.
22  #07/779,066, was allowed. Prior to the abandonment of US patent
23  appl. 07/776,066 Plaintiff filed a continuation-in-part application
24  adding new and important improvements. The claims of the prior
25  application were recited. (See Exhibit 2.) Said application remains

14

1   pending under a petition for the correction of a clerical error to
2   the Commissioner of Patents.

3   34.   On May 9, 1995, Furness, Melville, Tidwell filed a US patent
4   application '818 for a "Virtual Retinal Display with a Fiber Optic
5   Point Source."

6   35.   Plaintiff's 1991 Appl.'066 disclose a fiber optic light source
7   for the same purpose as the Furness 1995 application '818, and
8   constitutes prior pending art to the Furness application.

9   36.   On November 14, 1995, the first Furness-Kollin application was
10   allowed, now U.S. Patent 5,467,104.

11   37.   On January 21, 1997, the second Furness application was allowed,
12   now U.S. Patent 5,596,339.

13   38.   During 1997, Plaintiff became aware of that the Furness-Kollin
14   patents recited confidential material invented by or disclosed in
15   Plaintiff's patent applications filed over one year prior to the
16   first Furness patent.

17   39.   During the summer of 1997, Plaintiff sent Microvision a letter
18   generally describing the similarities together with a copy of the
19   Plaintiff's Patent Notice of Allowance.  Plaintiff offered to
20   disclose the full patent application under a non-disclosure
21   agreement between the parties. Plaintiff also proffered a settlement
22   offer which included binding arbitration or mediation.

23   40.   After a number of discussions, Microvision drafted and responded
24   with a signed non-disclosure agreement which included the right to
25   disclose said information to government contracting authorities and
    the U.S. Patent Office. See Exhibit 10.

1  41.   Plaintiff responded by suggesting certain modifications which

2      would initially only permit the disclosure to be used for the

3      purpose of Microvision determining the validity of Plaintiff's

4      claims.

5  42.   On November 4, 1997, Microvision sent Plaintiff a letter

6      rejecting any offer of settlement. (See Exhibit 11).

7

8                          COUNT I

9        Defendants Conspired to Obtain and Use Trade Secrets

10 43.   Plaintiffs reallege aforementioned paragraphs above as if fully

11     set forth herein.

12 44.   From 1986 to the present, defendants Kollin, Furness, Altman,

13     Weinberg, Kennedy, Teledyne in coordination with other persons known

14     and unknown developed an unlawful and corrupt organization of

15     individuals who planned and executed two or more unlawful schemes to

16     obtain proprietary technical information and inventions of the

17     plaintiff related to imaging systems, research details, business and

18     research contacts and other trade secrets of the plaintiff.

19 45.   Defendants Kollin and Furness unlawfully used said proprietary

20     trade secrets and information of the plaintiff for the purpose of

21     fraudulent procuring applications for U.S. Patents, used the US

22     mails and interstate wires to impede and unlawfully solicit

23     interstate business and U.S. government contracts, and filed

24     fraudulent statements with the U.S. Patent Office and the Securities

25     and Exchange Commission.

1  46.   Said acts are violations of M.G.L. 93 § 42 and other State and
2  Federal laws.

3

4                              COUNT II

5  Defendants Ongoing Conspiracy to Engage in Restraint of Trade and
6  Unfair Competition in Interstate Commerce and Government Contracting
7  47.   Plaintiffs reallege aforementioned paragraphs above as if fully
8  set forth herein.
9  48.   Defendants Kollin, Furness, HITL, Microvision and others, jointly
10  and severally, had developed an ongoing corrupt organization which
11  has used unlawfully obtained trade secrets to impede interstate
12  commerce, and used fraudulently procured patents on the VRD
13  inventions of the plaintiff for the purposes of soliciting
14  interstate business, U.S. government contracts and the registration
15  and sale of interstate securities.
16  49.   Said acts have impeded and prevented Plaintiff from obtaining
17  funding, U.S. government and other contracts for the development of
18  his inventions.
19  50.   Said acts are violations of M.G.L. 93 § 42 and 18 USC § 1962.
20
21                              COUNT III
22  Defendants Conspiracy to Engage in Unlawful Monopolistic Practices in
23                          Interstate Commerce
24
25  51.   Plaintiffs reallege aforementioned paragraphs above as if fully
   set forth herein.

                                 17

1   52.    Defendants Kollin, Furness, HITL, Microvision and others, jointly
2       and severally, unlawfully engaged in unfair competition and
3       monopolistic practices by using said fraudulent procured patents on
4       the inventions of the plaintiff for the purposes of creating a
5       monopolistic position, restraining competitive interstate business,
6       obtaining U.S. government contracts and the registration and sale of
7       interstate securities.
8   53.    Said acts are violations of 15 USC § 2 and other state and
9       federal laws.
10
11                              COUNT VI
12       Defendants Conspiracy to Intimidate and Attempted Extortion
13                 to Restrain Trade in Interstate Commerce
14  54.    Plaintiffs reallege aforementioned paragraphs above as if fully
15      set forth herein.
16  55.    Defendants Altman, Kollin, Weidemier, Weinberg and others used
17      and communicated trade secrets information to third parties and used
18      intimidation, threats of extortion and physical violence to
19      plaintiff's person, family and property to restrain competition and
20      impede interstate commerce.
21  56.    Defendants Altman engaged in unlawful monopolistic practices by
22      using intimidation, threats of extortion, and physical violence to
23      obtain the assignment of plaintiff's patents.
24  57.    Defendants Altman engaged in unlawful monopolistic practices by
25      using intimidation, threats of extortion, and physical violence to
        prevent the plaintiff's efforts to obtain U.S. Patents, offer said

1  inventions for sale to the public, and impede the plaintiff's effort

2  to engage in interstate competition in the field.

3  58.    Said acts are violations of 15 USC § 2, 18 USC § 1962 and other

4  state and federal laws.

5

6                              COUNT V

7  Defendants Unlawful Monopolistic Practices and Interference with

8                         Business Relations

9  59.    Plaintiffs reallege aforementioned paragraphs above as if fully

10  set forth herein.

11  60.    Defendants conspired to engage, and engaged in unlawful

12  monopolistic practices by using a fraudulently procured patent to

13  attempt to monopolize and to monopolize the market in time lapse

14  autostereoscopic imaging systems.

15  61.    Defendant Weidemier fraudulently asserted to MIT officers that no

16  binding modification of VI-MIT license have been effected.  Said

17  fraudulent assertion caused MIT to unilaterally revoked said

18  license, causing substantial damage to the plaintiffs and

19  subsequently permitting MIT to further to engage, and engaged in

20  unlawful monopolistic practices by using a fraudulently procured

21  patent to attempt to monopolize and to monopolize the market in time

22  lapse autostereoscopic imaging systems.

23

24

25

1                              REQUEST FOR RELIEF

2   1. That the Court adjudge and decree that the defendants have combined

3      and conspired to monopolize, have attempted to monopolize and have

4      monopolized interstate trade and commerce in head mounted displays

5      with infinite and focal adjustments, in violation of Section 2 of

6      the Sherman Act;

7   2. That the Court adjudge and decree that the defendants have combined

8      and conspired to fraudulently procure U.S. patents, engaged in a

9      scheme and conspiracy to obtain trade secrets, engaged in unfair

10     competition including but not limited to: (a) causing or attempting

11     to delay the manufacture of the plaintiffs products for the purpose

12     of perpetuating or gaining a competitive advantage, (b) using

13     unlawful obtained trade secrets for the purpose of furthering the

14     defendants' research, development and manufacturing, and the

15     fraudulent and advantageous procurement of U.S. patents constructed

16     to be questionably differentiable, and (c) using said unlawfully

17     obtained trade secrets to cause the plaintiff to waste and

18     dissipate assets;

19  3. That the Court adjudge and decree that the defendants have combined

20     and conspired to monopolize, have attempted to monopolize and have

21     monopolized, and attempt to interfere and have interfered with

22     interstate trade and commerce in said imaging systems, and stage

23     special effects, in violation of 18 USCS § 1962, by threats,

24     intimidation, and extortion, through the fraudulent use of

25     interstate mail and travel, through fraud in the sale of

       securities, through tampering and retaliating against a witness,

1   and be engaging in monetary transactions in property derived from
2   specified unlawful activity;
3  4. That each of the defendants, their officers, directors, agents,
4      employees and all persons, firms or corporations acting on behalf
5      of defendants or any one of them be perpetually enjoined from
6      continuing to carry out, directly or indirectly, the aforesaid
7      combination and conspiracy to monopolize, attempt to monopolize,
8      and monopolization of the aforesaid interstate trade and commerce
9      in imaging systems;
10 5. That the actual damages to plaintiffs' business and property
11     proximately resulting from such violations be determined;
12 6. That plaintiffs have judgment against the defendants for three
13     times the amount of actual damages so determined, together with its
14     costs and reasonable attorneys' fees as provided by law;
15 7. That the tradename, business, goodwill and assets of Microvision
16     derived, enhanced or obtained as a proximate result of the
17     fraudulent procurement of patent and other intellectual property
18     rights, and misrepresentation in the sale of interstate securities,
19     and government contracting be transferred to the plaintiffs;
20 8. That the defendant Microvision be required to transfer
21     manufacturing and other assets sufficient to insure competition in
22     the manufacture and sale of said imaging systems;
23 9. That this Court order the defendants, their employees, agents, and
24     associates to immediately and permanently desist from all unlawful
25     activities, including but not limited to acts of intimidation, and
       issue an immediate order prohibiting the defendants, their

21

1    employees, agents, and associates from contacting, or causing

2    themselves to be placed with 300' of the plaintiff or members of

3    the plaintiffs family.

4   10. That the plaintiff have such other and further relief as the nature

5    of the case may require and as the Court may deem just and proper;

6   11. That the plaintiff recover the costs of this action.

7                    PLAINTIFF DEMANDS A JURY TRIAL.

8

9   Signed and Dated this 17th day of February, 1998.

10

11

12

13   Dennis J. Solomon, plaintiff pro se

14   PO Box 289

15   Yarmouth Port, MA 02675

16   508 394 9221

17

18

19

20

21

22

23

24

25

APPENDIX EXHIBITS

1. Notice of Allowance, US Patent Application 07/779,066, filing date 10/10/91, date mailed 03/09/93, Dennis J Solomon, Inventor

2. Title Page, US Patent Application No. 08/074,398, "Stereoscopic Visual Display System with Scanning Focal Adjustment", filing date 6/10/93, date mailed 06/09/93, Dennis J Solomon, Inventor

3. Foreign Filing License Granted 7/15/93, US Patent Application No. 08/074,398, "Stereoscopic Visual Display System with Scanning Focal Adjustment", filing date 6/10/93, date mailed 06/09/93, Dennis J Solomon, Inventor

4. USAF, Brooks AFB, Response to HMD proposals dated 04/01/94.

5. Beamon Patent, US No. 5,091,719, filed 12/26/89, issued 02/25/92, Kollin AS Patent

6. Furness HMD Transparency Patent, US No. 5,162,828, filed 12/26/89, issued 07/25/86.

7. Furness-Kollin VRD Patent, US No. 5,467,104, filed 10/22/92, issued 11/14/95.

8. Furness FiberOptic VRD Patent, US No. 5,596,339 filed 05/09/95, issued 01/21/97.

9. Solomon Low Inertial Beam Direction Patent, US No. 4,777,568, filed 11/03/86, issued 10/11/88.

10. Microvision to DJS, Non-Disclosure Agreement, 10/16/97

11. Microvision Letter to DJS, 11/4/97

12. Kollin Autostereoscopic U.S. Patent No. 4,853,769, filed June 16, 1987, issued August 1, 1989



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

DENNIS J. SOLOMON
P. O. BOX 289
YARMOUTHPORT, MA 02675

25M3

**NOTICE OF ALLOWANCE**
**AND ISSUE FEE DUE**

[ ] Note attached communication from the Examiner
[ ] This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/779,066 | 10/10/91 | 010 | SUGARMAN, S | 2507 | 03/09/93 |

First Named Applicant SOLOMON, DENNIS J.

TITLE OF INVENTION STEREO VISUAL DISPLAY SYSTEM WITH SCANNING FOCAL ADJUSTMENT

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 0 | 359-462.000 | L17 | UTILITY | YES | $585.00 | 06/09/93 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.**
**PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN _THREE MONTHS_ FROM THE MAILING DATE OF THIS NOTICE OR THIS**
**APPLICATION SHALL BE REGARDED AS ABANDONED.   THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

## HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:

A. If the Status is changed, pay twice the amount of the
FEE DUE shown above and notify the Patent and
Trademark Office of the change in status, or
B. If the Status is the same, pay the FEE DUE shown
above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with,
payment of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
Even if the ISSUE FEE has already been paid by a charge to deposit account, Part B should be completed and returned.
If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of**
**maintenance fees.**

APPLICATION FOR A UNITED STATES PATENT

Dennis J. Solomon

P.O. Box 289

Yarmouthport, Massachusetts

02675-0289


Telephone 508-394-1737

United States Citizen

STEREOSCOPIC VISUAL DISPLAY SYSTEM WITH SCANNING FOCAL ADJUSTMENT

DESCRIPTION

1. Technical Field

This invention relates to visual display and particularly stereo viewers. This application is a *fwc* continuation-in-part of my copending application 07/779,066.

2. Background Art

Binocular stereoviewers have a long history. Early "magic lanterns" of the turn of the century presented two separate photographs through independent optical systems. These systems functions by presenting slightly offset images of each scene to each eye.  Image scanning displays also have a long history beginning in the 1920s. More recent systems based on electronic interfaces utilized miniature CRT displays, LCD panels, and optical scanning techniques such a rotating polygons. One recent system manufactured by Reflection Technologies of Waltham, MA..

3

PTO-103X
(Rev. 7-83)

**FILING RECEIPT**



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
**ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS**
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | GRP ART UNIT | FIL FEE REC'D | ATTORNEY DOCKET NO. | DRWGS | TOT CL | IND CL |
|---|---|---|---|---|---|---|---|
| 08/074,398 | 06/10/93 | 2507 | $355.00 | | 14 | 16 | 3 |

DENNIS J. SOLOMON
P.O. BOX 289
YARMOUTHPORT, MA 02675

Receipt is acknowledged of this patent application. It will be considered in its order and you will be notified as to the results of the examination. Be sure to provide the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION when inquiring about this application. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. If an error is noted on this Filing Receipt, please write to the Application Processing Division's Customer Correction Branch within 10 days of receipt. Please provide a copy of the Filing Receipt with the changes noted thereon.

**Applicant(s)**    DENNIS J. SOLOMON, YARMOUTHPORT, MA.

FOREIGN FILING LICENSE GRANTED 07/15/93          * SMALL ENTITY *
TITLE
STEREOSCOPIC VISUAL DISPLAY SYSTEM WITH SCANNING FOCAL ADJUSTMENT

PRELIMINARY CLASS: 359

4



# DEPARTMENT OF THE AIR FORCE
### ARMSTRONG LABORATORY (AFMC)
### BROOKS AIR FORCE BASE, TEXAS

0 1 APR 1994

Belva Williams
AL/XPTT
2509 Kennedy Circle
Brooks AFB TX 78235-5118

Dennis J. Solomon
Volumetric Imaging, Inc.
2200 One Kendall Square
Cambridge, MA  02139

Dear Mr. Solomon

    Your proposal, entitled "Three Dimensional Immersion HMD with
Visual Accommodation," submitted to the Armstrong Laboratory
under DoD Solicitation 94.1 was not selected for an award.  This
decision was reached on the basis of a comprehensive evaluation
in accordance with the criteria set forth in the Small Business
Innovation Research (SBIR) Program Solicitation and consideration
of other factors, including the possible duplication with other
research and development, program balance, and budget
limitations.  If you want a written technical debriefing, it
should be requested in writing to Armstrong Laboratory/XPTT, 2509
Kennedy Circle, Brooks AFB TX 78235-5118.

    No further consideration will be given to your proposal.
Your interest in the Air Force SBIR Program is sincerely
appreciated and we encourage your continued participation.

                                        Sincerely

                                        *Belva Williams*

                                        BELVA WILLIAMS
                                        SBIR Program Manager



US005091719A

# United States Patent [19]

## Beamon, III

[11] Patent Number: 5,091,719

[45] Date of Patent: * Feb. 25, 1992

[54] HELMET DISPLAY

[75] Inventor: William S. Beamon, III, Ormond Beach, Fla.

[73] Assignee: General Electric Company, Syracuse, N.Y.

[ * ] Notice: The portion of the term of this patent subsequent to Jan. 30, 2007 has been disclaimed.

[21] Appl. No.: 456,502

[22] Filed: Dec. 26, 1989

[51] Int. Cl.$^5$ ............................................. G09G 3/02
[52] U.S. Cl. ...................................... 340/705; 358/93; 358/104
[58] Field of Search ................... 358/103, 104, 93, 88; 340/705, 780, 980; 350/174

[56] References Cited

U.S. PATENT DOCUMENTS

4,897,715 1/1990 Beamon, III ........................ 340/705

OTHER PUBLICATIONS

Jenkins et al., "Fundamentals of Optics", 1957, p. 6.

Primary Examiner—Jeffery A. Brier
Assistant Examiner—Regina Liang
Attorney, Agent, or Firm—Paul Checkovich; Stephen A. Young

[57] ABSTRACT

A helmet mountable display system may display a raster scanned image to each eye of a wearer of the helmet for presenting a stereoscopic image. The system includes a first and second lens having a respective optical axis and first and second oscillatable deflecting surfaces for generating the raster. The lenses may be arranged so that the optical axes from a V with the first and second deflecting surfaces disposed substantially at the apex of the V. This arrangement may be bilaterally symmetrical such that a plurality of light rays for forming a first image passes through the first lens along one optical path, strikes the first deflecting surface, is directed onto the second deflecting surface, and is directed through the second lens toward a focal plane where a real image is available to be supplied to one eye. Another plurality of light rays for forming a second image passes through the second lens along another optical path generally opposite to the one optical path, strikes the first deflecting surface, is directed onto the second deflecting surface and is directed through the first lens toward a focal plane where another real image is available to be supplied to the other eye. The real images are raster scanned when the first and second surfaces are oscillating in a predetermined pattern. Each light ray supplies information to a corresponding zone of the image.

21 Claims, 3 Drawing Sheets



# United States Patent [19]

## Furness et al.

| | |
|---|---|
| [11] | Patent Number: **5,162,828** |
| [45] | Date of Patent: **Nov. 10, 1992** |

[54] **DISPLAY SYSTEM FOR A HEAD MOUNTED VIEWING TRANSPARENCY**

[76] Inventors: **Thomas A. Furness**, 4070 Hyland Dr., Dayton, Ohio 45424; **Robert E. Fischer**, 2060 Hillsbury, Westlake Village, Calif. 91362; **Peter K. Purdy**, 4233 Phinney Ave., N., Seattle, Wash. 98103; **Kirk Beach**, 2411 24th E., Seattle, Wash. 98112

[21] Appl. No.: **345,886**

[22] Filed: **May 1, 1989**

**Related U.S. Application Data**

[63] Continuation-in-part of PCT/US87/02455, Sep. 24, 1987 continuation-in-part of Ser. No. 36,826, Apr. 10, 1987, Pat No. 4,757,714, which is a continuation-in-part of Ser. No. 911,573, Sep. 25, 1986, Pat. No. 4,722,222.

[51] Int. Cl.⁵ ............................................. G02B 24/17
[52] U.S. Cl. ...................................... 353/122; 351/158; 359/618
[58] Field of Search ................... 340/705; 353/30–37, 353/122, 101, 14; 350/169–174; 351/158, 119, 120

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 1,871,877 | 8/1932 | Buckman | 353/14 |
| 2,513,102 | 6/1950 | Parlini | 353/113 X |
| 3,666,887 | 5/1972 | Freeman | 350/174 X |
| 3,712,714 | 1/1973 | Uyeda | 340/705 |
| 3,816,005 | 6/1974 | Kirschner | 350/174 X |
| 3,907,410 | 9/1975 | Richmond | 351/119 |
| 3,923,370 | 12/1975 | Mostrom | 350/174 X |
| 4,081,209 | 3/1978 | Heller | 350/174 |
| 4,294,524 | 10/1981 | Stolov | 353/122 X |
| 4,414,431 | 11/1983 | McCartney | |
| 4,735,473 | 4/1988 | Migozzi | 350/174 X |
| 4,751,691 | 6/1988 | Perera | 351/158 X |
| 4,753,514 | 6/1988 | Kubik | 350/174 |
| 4,806,011 | 2/1989 | Bettinger | 351/158 |

**FOREIGN PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 1438789 | 9/1976 | United Kingdom | 350/174 |
| 2149140 | 6/1985 | United Kingdom | 353/30 |

**OTHER PUBLICATIONS**

IBM Tech. Disc. Bull., vol. 22, #1, Jun. 1979, projected image display–Leon–.
Displays, vol. 2, #3, Oct. 1980, pp. 129–130, Helmut mounted display system etc–Walker et al..

*Primary Examiner*—Harry N. Haroian
*Attorney, Agent, or Firm*—McAndrews, Held & Malloy, Ltd.

[57] **ABSTRACT**

A display system for conventional eyewear having a transparency that defines a field of view and a frame for supporting the transparency on a user's head is shown. The display system includes a light transmissive display mounted on the frame of the eyewear and optics for collimating light to project an image of the displayed information at a distance from the user in the periphery of the field of view defined by the transparency. The optics may include a single mirror that receives the information directly from the display wherein the mirror is toroidal or the like so as to project an enlarged image at an apparent optical distance from the user that is greater than the actual optical path. Alternatively, a planar mirror may be employed with a collimating lens to project the image at a desired distance from the user. The mirror may be fully reflective or partially reflective so as to superimpose the image of the displayed information on the scene viewed by the user through the transparency of the eyewear. Further, means are provided for automatically adjusting the optical path defined by the relative position of the mirror, the display and the user's eye to accommodate heads of various sizes.

**94 Claims, 10 Drawing Sheets**



**United States Patent** [19]

**Furness, III et al.**

[11] **Patent Number:** 5,467,104

[45] **Date of Patent:** Nov. 14, 1995

[54] **VIRTUAL RETINAL DISPLAY**

[75] Inventors: **Thomas A. Furness, III; Joel S. Kollin**, both of Seattle, Wash.

[73] Assignee: **Board of Regents of the University of Washington**, Seattle, Wash.

[21] Appl. No.: **965,070**

[22] Filed: **Oct. 22, 1992**

[51] Int. Cl.⁶ .................................................. G09G 3/02

[52] U.S. Cl. .................................. 345/8; 359/630

[58] Field of Search ................... 345/7, 8, 9; 359/630, 359/631; 340/980

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,361,384 | 11/1982 | Bosserman ...................... 359/630 |
| 4,662,731 | 5/1987 | Robert et al. . |
| 4,764,005 | 8/1988 | Webb et al. . |
| 4,765,730 | 8/1988 | Webb . |
| 4,763,873 | 9/1988 | Webb . |
| 4,768,874 | 9/1988 | Webb et al. . |
| 4,838,679 | 6/1989 | Bille . |
| 4,854,692 | 8/1989 | Kobayashi . |
| 5,162,828 | 11/1992 | Furness et al. ................ 353/122 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0473343A1 | 3/1992 | European Pat. Off. . |
| 0562742A1 | 9/1993 | European Pat. Off. . |

OTHER PUBLICATIONS

"Application of Miniature CRT Displays" by Jim E. Wurtz in Information Display Sep. 1987 pp. 16–18.
CyberEdge Journal, "1200 Lines of Resolution", Jul./Aug.

1991, p. 6.
Confocal Scanning Laser Ophthalmoscope Webb et al. *Applied Optics* vol. 26 No. 8, Apr. 15, 1987 pp. 1492–1499.

*Primary Examiner*—Jeffery Brier
*Attorney, Agent, or Firm*—McAndrews, Held & Malloy, Ltd.

[57] **ABSTRACT**

A virtual retinal display utilizes photon generation and manipulation to create a panoramic, high resolution, color virtual image that is projected directly onto the retina of the eye without creating a real or an aerial image that is viewed via a mirror or optics. The virtual retinal display includes a source of photons, the photons being modulated with video information and scanned in a raster type of pattern directly onto the retina of the user's eye. The photon generator may utilize coherent or non-coherent light. Further, the photon generator may utilize color light generators so as to scan a colored virtual image directly onto the retina of the user's eye. The virtual retinal display may also include a depth accommodation cue to vary the focus of scanned photons rapidly so as to control the depth perceived by a user for each individual picture element of the virtual image. Further, an eye tracking system may be utilized to sense the position of an entrance pupil of the user's eye, the detected pupil position being utilized to move the scanned photons so as to be approximately coincident with the entrance pupil of the eye. The detected pupil position may also be used to change the video image scanned onto the retina so that as the user's eye moves, the view perceived by the user changes.

**11 Claims, 5 Drawing Sheets**



# United States Patent [19]

## Furness, III et al.

[11] Patent Number: **5,596,339**

[45] Date of Patent: **Jan. 21, 1997**

[54] **VIRTUAL RETINAL DISPLAY WITH FIBER OPTIC POINT SOURCE**

[75] Inventors: **Thomas A. Furness, III**, Seattle; **Charles D. Melville**, Issaquah; **Michael R. Tidwell**, Seattle, all of Wash.

[73] Assignee: **University of Washington**, Seattle, Wash.

[21] Appl. No.: **437,818**

[22] Filed: **May 9, 1995**

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 965,070, Oct. 22, 1992, Pat. No. 5,467,104.

[51] Int. Cl.⁶ ........................................... G09G 3/02
[52] U.S. Cl. ....................................... 345/8; 359/630
[58] Field of Search ........................... 345/7-9; 348/53; 359/630; 340/980

[56]              **References Cited**

#### U.S. PATENT DOCUMENTS

| 3,833,300 | 9/1974 | Rymes | ........................ | 359/630 |
| 4,310,849 | 1/1982 | Glass | ........................ | 348/53 |
| 4,878,046 | 10/1989 | Smith | ........................ | 345/8 |

*Primary Examiner*—Jeffery Brier
*Attorney, Agent, or Firm*—McAndrews, Held & Malloy, Ltd.

[57]              **ABSTRACT**

A virtual retinal display utilizes photon generation and manipulation to create a panoramic, high resolution, color virtual image that is projected directly onto the retina of the eye. The virtual retinal display includes a source of photons, the photons being modulated with video information and scanned by a scanning system in a raster type of pattern directly onto the retina of the user's eye. A single, monofilament optical fiber of very small diameter couples light from the photon generator to the scanning system so as to provide to the scanning system a point source of light at the fiber's exit aperture. The photon generator may utilize coherent or non-coherent light. Further, the photon generator may utilize color light emitters so as to scan a colored virtual image directly onto the retina of the user's eye.

**32 Claims, 6 Drawing Sheets**



# United States Patent [19]

## Solomon

[11]  Patent Number:  **4,777,568**

[45]  Date of Patent:  **Oct. 11, 1988**

[54]  **LOW-INERTIAL BEAM DIRECTION LIGHTING SYSTEM**

[75]  Inventor:  Dennis Solomon, Yarmouth, Mass.

[73]  Assignee:  Altman Stage Lighting Co., Yonkers, N.Y.

[21]  Appl. No.:  119,396

[22]  Filed:  Nov. 10, 1987

### Related U.S. Application Data

[63]  Continuation-in-part of Ser. No. 926,632, Nov. 3, 1986, Pat. No. 4,729,071.

[51]  Int. Cl.⁴ ............................................ F21V 21/30
[52]  U.S. Cl. ............................ 362/35; 362/277;
362/457; 362/458; 350/6.9; 350/6.91
[58]  Field of Search ................ 362/35, 457, 458, 277;
350/6.7, 6.8, 6.9, 6.91

[56]  **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,961,116 | 5/1934 | Van Braam Van Vloten | 362/35 X |
| 3,420,594 | 1/1969 | Chapman | 350/6.9 X |
| 3,710,098 | 1/1973 | Walden | 362/35 |
| 3,987,296 | 10/1976 | Coppola et al. | 362/277 |
| 4,104,615 | 8/1978 | Hunter | 362/35 X |
| 4,256,364 | 3/1981 | Minoura et al. | 350/6.91 X |
| 4,353,110 | 10/1982 | Ellis | 362/35 |
| 4,392,187 | 7/1983 | Bornhorst | 362/85 X |

*Primary Examiner*—Larry Jones

*Attorney, Agent, or Firm*—Lackenbach, Siegel, Marzullo & Aronson

[57]  **ABSTRACT**

The present invention provides a light display system for projecting a double-pattern light display. A luminaire holding the lamp and light control devices and projecting a primary first light beam is fixed to a first housing that in turn is nonrotatably mounted to a control bar. A second housing containing a fixed reflector apparatus adapted to receive a light beam from the luminaire is connected to and rotatable relative to the first housing about a first axis. At least two mirrors fixed to the second housing are positioned at an angle relative to the first axis and receive portions of the first light beam as second light beams. The fixed mirrors are rotatable with the second housing about the first axis. The rotatable mirrors project the second light beams to at least two rotatable mirrors each associated with a fixed mirror and the rotatable mirrors project the second light beams as third light beams about a second axis transverse to the first axis. A tilt driver attached to the second housing rotates the rotatable mirrors about the second axis. Shafts radially extend from the tilt drivers along the second axis to the rotatable mirrors for rotation and support. The light beams are thus moved simultaneously about two axes so as to cast double patterned lights on the environment.

**16 Claims, 12 Drawing Sheets**



# United States Patent [19]

## Solomon

[11] Patent Number: 4,777,568

[45] Date of Patent: Oct. 11, 1988

[54] LOW-INERTIAL BEAM DIRECTION LIGHTING SYSTEM

[75] Inventor: Dennis Solomon, Yarmouth, Mass.

[73] Assignee: Altman Stage Lighting Co., Yonkers, N.Y.

[21] Appl. No.: 119,396

[22] Filed: Nov. 10, 1987

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 926,632, Nov. 3, 1986, Pat. No. 4,729,071.

[51] Int. Cl.⁴ ............................................. F21V 21/30
[52] U.S. Cl. .................................. 362/35; 362/277;
362/457; 362/458; 350/6.9; 350/6.91
[58] Field of Search ................. 362/35, 457, 458, 277;
350/6.7, 6.8, 6.9, 6.91

[56] References Cited

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 1,961,116 | 5/1934 | Van Braam Van Vloten ... 362/35 X |
| 3,420,594 | 1/1969 | Chapman ............................ 350/6.9 X |
| 3,710,098 | 1/1973 | Walden ................................. 362/35 |
| 3,987,296 | 10/1976 | Coppola et al. ..................... 362/277 |
| 4,104,615 | 8/1978 | Hunter ................................. 362/35 X |
| 4,256,364 | 3/1981 | Minoura et al. .................. 350/6.91 X |
| 4,353,110 | 10/1982 | Ellis ..................................... 362/35 |
| 4,392,187 | 7/1983 | Bornhorst ......................... 362/85 X |

Primary Examiner—Larry Jones

Attorney, Agent, or Firm—Lackenbach, Siegel, Marzullo & Aronson

[57] ABSTRACT

The present invention provides a light display system for projecting a double-pattern light display. A luminaire holding the lamp and light control devices and projecting a primary first light beam is fixed to a first housing that in turn is nonrotatably mounted to a control bar. A second housing containing a fixed reflector apparatus adapted to receive a light beam from the luminaire is connected to and rotatable relative to the first housing about a first axis. At least two mirrors fixed to the second housing are positioned at an angle relative to the first axis and receive portions of the first light beam as second light beams. The fixed mirrors are rotatable with the second housing about the first axis. The rotatable mirrors project the second light beams to at least two rotatable mirrors each associated with a fixed mirror and the rotatable mirrors project the second light beams as third light beams about a second axis transverse to the first axis. A tilt driver attached to the second housing rotates the rotatable mirrors about the second axis. Shafts radially extend from the tilt drivers along the second axis to the rotatable mirrors for rotation and support. The light beams are thus moved simultaneously about two axes so as to cast double patterned lights on the environment.

16 Claims, 12 Drawing Sheets





(d) Independently developed by the receiving party and such independent development

can be shown by written documentation; or

(e) Provided to a third party without restriction.

The PROPRIETARY INFORMATION shall be and remains the property of INDIVIDUAL, and the written PROPRIETARY INFORMATION, and any copies thereof, shall be promptly returned or destroyed upon written request.

MV may disclose PROPRIETARY INFORMATION in response to an order of a court or government agency, or to satisfy the best mode or disclosure requirements of the U.S. Patent Office.

Neither party has an obligation under or in consequence of this Agreement to provide any information to the other or to purchase or sell any service or item from or to the other party. Nothing contained in this Agreement shall be construed as granting or conferring any rights by license or otherwise, expressly, implied, or otherwise for any invention, discovery or improvement made, conceived, or acquired prior to, on or after the date of this Agreement.

Neither party shall publicly announce or disclose the existence of this Agreement or its terms and conditions, or advertise or release any publicity regarding this Agreement, without the prior written consent of the other party. This provision shall survive the expiration, termination or cancellation of this Agreement.

This Agreement sets forth the entire understanding and agreement between the parties hereto as to the subject matter of this Agreement and merges and supersedes all previous communications, negotiations, warranties, representations and agreements, either oral or written, with respect to obligations of confidentiality of the subject matter hereof, and no addition to or modification of this

Microvision, Inc.
2203 Airport Way South, Suite 1c
Seattle, Washington 98134
USA

phone:   206 623-7055
facsimile: 206 623-7331
website:  www.mvis.com





## MICROVISION

## NON-DISCLOSURE AGREEMENT

WHEREAS, **DENNIS J. SOLOMON** (hereinafter "INDIVIDUAL") wishes to deliver to **MICROVISION, INC.** (hereinafter "MV"), a copy of INDIVIDUAL's patent application Serial No. 07/779,066 for MV's review (hereinafter "PROPRIETARY INFORMATION) and MV wishes to receive the PROPRIETARY INFORMATION.

NOW, THEREFORE, the parties agree as follows:

For a period of two (2) years from the date of this agreement, MV shall not disclose the PROPRIETARY INFORMATION to any other person, firm or corporation, or use the PROPRIETARY INFORMATION for its own benefit, except for the purpose of evaluating the technology or a possible cooperative relationship between INDIVIDUAL and MV. MV shall use at least the same degree of care to avoid disclosure or use of the PROPRIETARY INFORMATION as it employs with respect to its own proprietary information of like importance.

Information shall not be deemed PROPRIETARY INFORMATION and MV shall have no obligation with respect to any information which is:

(a) Already known to the receiving party prior to receipt from the providing party and can be so shown;

(b) Now or hereafter becomes publicly known through no wrongful act of the receiving party;

(c) Rightfully received from a third party without similar restriction and without breach of this Agreement;



Agreement shall be binding on either party hereto, unless reduced to writing and duly executed by each of the parties hereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives effective as of the latter of the dates signed below.

**MICROVISION, INC.**                    **DENNIS J. SOLOMON**

By: _____           By: _____

Name: _Todd R. McIntyre_____            Name: _____

Title: _Vice President_____            Title: _____

Date: _10/17/97_____            Date: _____





2203 Airport Way South
Seattle, Washington 981
USA

phone: 206 623-7028
facsimile: 206 623-7331
website: www.mvis.com

**MICROVISION**

November 4, 1997

Dennis J. Solomon
P.O. Box 289
Yarmouth Port, MA 92675-0289

Dear Mr. Solomon:

I have reviewed your letters of October 27, 1997 and November 3, 1997. In each of these letters you imply that you have some actionable allegations against Microvision, Inc. As best we can tell from the facts you supplied to us, any claim you may have would be against parties other than Microvision. It is Microvision's firm belief that there is no allegation grounded in fact and warranted by law which you may assert against Microvision. Accordingly, Microvision believes any such claim, if filed, would be sanctionable.

With respect to our discussions regarding possible value of any intellectual property you or your company may hold, Microvision is interested in enabled subject matter that is the subject of a currently pending patent application or issued patent. The value of such rights would, of course, derive from any extension of the patent protection held by or available to Microvision as supported by the filing date and disclosure of such patent or patent application. We have not received sufficient facts to place any reasonable value on any pending applications you may have. Moreover, given your posture that you may pursue litigation against Microvision for which we believe there is no rational basis, Microvision is not interested in receiving any information that is restricted in any way.

Microvision wishes you success in the pursuit of your 3D imaging and related patents. If you wish to provide information to Microvision on an unrestricted basis, Microvision would be willing to review it.

Sincerely,

Casey T. Tegreene
Intellectual Property Counsel

# United States Patent [19]

## Kollin

[11] **Patent Number:** 4,853,769

[45] **Date of Patent:** Aug. 1, 1989

[54] **TIME MULTIPLEXED AUTO-STEREOSCOPIC THREE-DIMENSIONAL IMAGING SYSTEM**

[75] Inventor: **Joel S. Kollin,** Somerville, Mass.

[73] Assignee: **Massachusetts Institute of Technology,** Cambridge, Mass.

[21] Appl. No.: **62,904**

[22] Filed: **Jun. 16, 1987**

[51] Int. Cl.⁴ .................................. H04N 13/00
[52] U.S. Cl. ................................. 358/88; 358/90; 350/132; 350/143; 350/3.66
[58] Field of Search ............... 358/88, 89, 90, 91, 358/92, 3, 903; 364/521, 522; 350/130-143, 3.6, 3.66, 3.82; 354/112, 114; 352/57-63; 367/8, 11, 13; 73/603, 606, 610, 609

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,961,486 | 11/1960 | Marks | 358/88 |
| 3,097,261 | 7/1963 | Schipper et al. | |
| 3,140,415 | 7/1964 | Ketchpel | |
| 3,529,082 | 9/1970 | Hoesli | 358/92 |
| 3,674,332 | 7/1972 | Kogelnik | 350/3.66 |
| 3,829,838 | 8/1974 | Lewis et al. | 350/3.66 |
| 3,852,524 | 12/1974 | Ando et al. | 358/91 |
| 4,023,158 | 5/1977 | Corcoran | 358/88 X |
| 4,142,772 | 3/1979 | Lurie | 350/3.82 |
| 4,290,083 | 9/1988 | Collender | |
| 4,323,920 | 4/1982 | Collender | |
| 4,359,758 | 11/1982 | Teacherson | |
| 4,367,486 | 1/1983 | Eichenlaub | |
| 4,376,950 | 3/1983 | Brown et al. | |
| 4,415,996 | 11/1983 | Maynard et al. | 367/8 |
| 4,462,044 | 7/1984 | Thomason et al. | |
| 4,472,737 | 9/1984 | Iwasaki | 358/88 |
| 4,566,031 | 1/1986 | Kirk | 358/90 |
| 4,567,513 | 1/1986 | Imsand | |
| 4,584,604 | 4/1986 | Guichard et al. | |
| 4,607,255 | 8/1986 | Fuchs et al. | 358/89 X |
| 4,616,217 | 10/1986 | Nesbitt et al. | 358/88 X |
| 4,631,580 | 12/1986 | Taube et al. | 358/88 |
| 4,649,425 | 3/1987 | Pund | 358/88 |
| 4,671,632 | 6/1987 | August | 358/88 |

### FOREIGN PATENT DOCUMENTS

2087291  5/1982  Japan ........................ 358/88

### OTHER PUBLICATIONS

Tilton, Homer B., "The 3-D Oscilloscope," published by Prentice-Hall, Inc., Englewood, N.J. (1987).
Okoshi, T., *Three-Dimensional Imaging Techniques*, Academic Press, New York 1976, pp. 9-42, 124-185, 364-371.
Kollin, Joel S., "Collimated View Multiplexing: A New Approach to 3-D," *SPSE Three-Dimensional Imaging Conference*, Los Angeles, Jan. 1988 and SPIEV Proceedings, vol. 902, Jun. 1988.

*Primary Examiner*—Howard W. Britton
*Assistant Examiner*—Victor R. Kostak
*Attorney, Agent, or Firm*—Hamilton, Brook, Smith & Reynolds

### [57] ABSTRACT

Light reflected from a three-dimensional scene is sequentially scanned according to its direction as it passes through a window. At any given time only light traveling in one direction can pass through the window to be recorded. These sequentially recorded collimated views can be recorded, altered, transmitted, and displayed as desired. The views are displayed through a synchronized directional scanner which sequentially displays the views through respective angles, providing a scene with parallax as well as depth. The directional scanner may be a louver structure or a device for steering a collimated display.

**53 Claims, 6 Drawing Sheets**





1
2
3                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
4                              AT SEATTLE

5   DENNIS J. SOLOMON,                  )
                                        )
6            Plaintiff,                 )   CASE NO.   C98-258L
                                        )
7        v.                             )
                                        )   REPORT AND RECOMMENDATION
8   UNIVERSITY OF WASHINGTON,           )
                 et al.,                )
9                                       )
             Defendants.                )
10  _____)

11  I.   INTRODUCTION

12       This matter comes before the Court on Massachusetts

13  Institute of Technology's ("MIT") motion for summary judgment,

14  Defendant Weinberg's motion for summary judgment, and the motion

15  for summary judgment of Defendants University of Washington,

16  Joel Kollin and Thomas Furness, pursuant to Federal Rule of

17  Civil Procedure 56.   (Docs. #103, #124, #129).

18       On August 19, 1999, Defendants University of Washington,

19  Joel Kollin and Thomas Furness filed their motion for summary

20  judgment.   (Doc. #103).  On September 10, 1999, Plaintiff filed

21  a response in opposition to the motion for summary judgment

22  filed by Defendants University of Washington, Joel Kollin and

23  Thomas Furness.   (Doc. #109).   On September 14, 1999,

24  Defendants University of Washington, Joel Kollin and Thomas

25  Furness filed a reply in support of their motion for summary

26  judgment.   (Doc. #110).

27       On November 24, 1999, Defendant MIT filed a motion for

28  summary judgment.   (Doc. #124).   On December 13, 1999, Plaintiff

    REPORT AND RECOMMENDATION - 1
    c:\data\6779:ug

1  filed a response in opposition to Defendant MIT's motion for
2  summary judgment. (Doc. #135). On December 30, 1999, Defendant
3  MIT filed a reply in support of its motion for summary judgment.
4  (Doc. #140).

5      On December 9, 1999, Defendants Weinberg filed a motion for
6  summary judgment. (Doc. #130). On December 27, 1999, Plaintiff
7  filed a reply in opposition to Defendant Weinberg's motion for
8  summary judgment. (Doc. #148). On December 30, 1999, Defendant
9  Weinberg filed a reply in support of his motion for summary
10 judgment. (Doc. #142).

11     The Court, having reviewed the motions for summary
12 judgment, all papers in support and in opposition, and the
13 remaining record, recommends that motions for summary judgment
14 of Defendants University of Washington, Kollin, Furness,
15 Weinberg and MIT be GRANTED, that supplemental jurisdiction over
16 Plaintiff's state law claims be DECLINED, that Plaintiff's
17 claims against Defendants Teledyne Imaging Technologies,
18 Weidemier, Kennedy and Hart be DISMISSED and that this action be
19 DISMISSED with prejudice.

20 II.  BACKGROUND

21     On March 2, 1998, Plaintiff filed this action against
22 eleven defendants.[1] (Doc. #1). On January 13, 1998, the Court
23

24     [1] The only remaining parties to this action are University
25 of Washington, Kollin, Furness, Weinberg, MIT, Teledyne Imaging
   Technologies, Weidemier, Kennedy and Hart. Holodeck Trust,
26 Altman Stage Lighting and Microvision are no longer parties to
   this action. On September 2, 1998, the Court granted Defendant
27 Altman Stage Lighting's motion to dismiss. (Doc. #41).
   Holodeck Trust was originally a plaintiff in this action but was
28 dismissed by Order of this Court on March 1, 1999. (Doc. #67).

REPORT AND RECOMMENDATION - 2
c:\data\6779cg

1  granted Plaintiff's motion to supplement his complaint and
2  accepted Plaintiff's supplemental complaint for filing which
3  alleges a list of ten new factual allegations that supplement
4  Plaintiff's claims in his complaint.[2]  (Doc. #57).  In his
5  complaint, Plaintiff, a Massachusetts resident, alleges
6  generally that Defendants violated federal laws and
7  Massachusetts state law by using, patenting, and licensing
8  Plaintiff's "display imaging" propriety information without his
9  permission.

10     Plaintiff asserts five claims for relief under both federal
11 and Massachusetts state law which he organizes under "Counts I-
12 V" in his complaint.  Under Count I, he argues that Defendants
13 Kollin, Furness, Weinberg, Teledyne Imaging Technologies ("TIT")
14 and others conspired to obtain and use trade secrets in
15 violation of Massachusetts General Law ("M.G.L.") "93 § 42 and
16 other State and Federal laws."  (Doc. #1 at 17).  Specifically,
17 Plaintiff argues that such Defendants "planned and executed two
18 or more unlawful schemes to obtain proprietary technical
19 information and inventions of the plaintiff."  (Id. at 16).
20 Further, he asserts that the Defendants Kollin and Furness "used
21 said proprietary trade secrets and information of the plaintiff
22 for the purpose of fraudulent [sic] procuring applications for
23 U.S. Patents, used the U.S. mails and interstate fraud to impede
24

25 On March 2, 1999, Defendant Microvision's motion for summary
26 judgment was granted.  (Doc. #68).

27     [2]  The Court will hereinafter refer to Plaintiff's initial
28 compliant and his supplemental complaint together as Plaintiff's
   "complaint" in this action.

REPORT AND RECOMMENDATION - 3
c:\data\6779ag

1 and unlawfully solicit interstate business and U.S. government
2 contracts and filed fraudulent statements with the U.S. Patent
3 Office and the Securities Exchange Commission."   (Id.).
4 However, Plaintiff does not specifically allege any facts that
5 support a claim against Defendants University of Washington or
6 MIT under Count I.   (Id.).

7       Under Count II, Plaintiff asserts that Defendants violated
8 M.G.L. 93 § 42 and 18 U.S.C. § 1962 of the Racketeer Influenced
9 and Corrupt Organization Act ("RICO").  He argues that
10 Defendants Kollin, Furness, University of Washington and others
11 "developed an ongoing corrupt organization which has used
12 unlawfully obtained trade secrets to impede interstate commerce,
13 and used fraudulently procured patents on the VRD inventions of
14 the plaintiff for the purposes of soliciting interstate
15 business, U.S. government contracts and the registration and
16 sale of interstate securities."  (Id. at 17).  Essentially,
17 under Count II, Plaintiff reasserts his claim that Defendants'
18 actions violated M.G.L. 93 § 42 by misappropriating Plaintiff's
19 trade secrets and further argues that Defendants violated 18
20 U.S.C. § 1962 of RICO.  However, Plaintiff does not specifically
21 allege any claim against Defendants Weinberg or MIT under Count
22 II.   (Id.).

23       In Count III, Plaintiff claims that Defendants Kollin,
24 Furness, University of Washington and others violated 15 U.S.C.
25 § 2 of the Sherman Antitrust Act and "other state and federal
26 laws."  (Id. at 18).  Essentially, Plaintiff argues that
27 Defendants engaged in unlawful monopolistic practices in
28 interstate commerce.  Plaintiff asserts that Defendants

REPORT AND RECOMMENDATION - 4
c:\data\6779cg

1   "unlawfully engaged in unfair competition and monopolistic
2   practices by using said fraudulent [sic] procured patents on the
3   inventions of the plaintiff for the purposes of creating a
4   monopolistic position, restraining competitive interstate
5   business, obtaining U.S. government contracts and the
6   registration and sale of interstate securities."  (Id.).
7   However, Plaintiff does not specifically allege any facts that
8   support a claim against Defendants Weinberg or MIT under Count
9   III.  (Id.).

10       In Count IV, Plaintiff again alleges violations of 15
11  U.S.C. § 2 of the Sherman Antitrust Act, 18 U.S.C. § 1962 of
12  RICO, and "other state and federal laws."  (Id. at 19).  It
13  appears to the Court that Plaintiff in Count IV alleges the same
14  claims that he alleges in Count II and Count III of his
15  complaint concerning violations of the Sherman Antitrust Act and
16  RICO.  Plaintiff asserts that Defendants Kollin, Weinberg and
17  others "used and communicated trade secret information to third
18  parties and used intimidation, threats of extortion and physical
19  violence to plaintiff's person, family and property to restrain
20  competition and impeded interstate commerce."  (Id. at 18).
21  However, Plaintiff does not specifically allege any facts that
22  support a claim against Defendants University of Washington,
23  Furness or MIT in Count IV.  (Id.).

24       Under Count V, Plaintiff does not specifically assert that
25  Defendants have violated any laws.  Instead, Plaintiff titles
26  Count V as "Defendants Unlawful Monopolistic Practices and
27  Interference with Business Relations."  (Id. at 19).  While it
28  appears that Plaintiff is asserting that Defendants violated the

REPORT AND RECOMMENDATION - 5
c:\data\6779cg

1 Sherman Antitrust Act, 15 U.S.C. § 2, as he previously alleges
2 in Count III and Count IV of his complaint, any other basis for
3 Plaintiff's claims is unclear to the Court.  In addition, this
4 is the only Count in which Plaintiff alleges a claim against
5 Defendant MIT.  He alleges that Defendant MIT "engaged in
6 unlawful monopolistic practices by using a fraudulently procured
7 patent to attempt to monopolize and to monopolize the market in
8 the time lapse autostereoscopic imaging systems."  (Id. at 19).
9 Plaintiff does not specifically allege that Defendants
10 University of Washington, Kollin, Furness or Weinberg
11 participated in the violations that Plaintiff alleges under
12 Count V.

13 **III.  DISCUSSION**

14      **A.  Summary Judgment Standard**

15      Defendants have moved for summary judgment pursuant to
16 Federal Rule of Civil Procedure 56.  "One of the primary
17 purposes of the summary judgment rule is to isolate and dispose
18 of factually unsupported claims or defenses."  See Celotex v.
19 Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment is
20 appropriate if there is no genuine issue of material fact and
21 the moving party is entitled to judgment as a matter of law.
22 See Swayze v. United States, 785 F.2d 715, 717 (9th Cir. 1986)
23 (citing Fed. R. Civ. P. 56(c)).  The standard provided by Rule
24 56 requires not only that there be some alleged factual disputes
25 between the parties, but also that there be genuine issues of
26 material fact.  See Anderson v. Liberty Lobby, Inc., 477 U.S.
27 242, 247-48 (1986).  "The summary judgment inquiry thus
28 scrutinizes the plaintiff's case to determine whether the

REPORT AND RECOMMENDATION - 6
c:\data\6779cg

1 plaintiff has proffered sufficient proof, in the form of
2 admissible evidence, that could carry the burden of proof of
3 [the] . . . claim at trial." See Mitchell v. Data General
4 Corp., 12 F.3d 1310, 1315 (4th Cir. 1993).

5       To meet the initial burden under Rule 56, "the party
6 seeking summary judgment always bears the initial responsibility
7 of informing the district court of the basis for its motion, and
8 identifying those portions of `the pleadings, depositions,
9 answers to interrogatories, and admissions on file, together
10 with affidavits, if any,' which it believes demonstrate the
11 absence of a genuine issue of material fact." Celotex, 477 U.S.
12 at 324.  If the movant meets this burden, then summary judgment
13 will be granted unless there is significant probative evidence
14 tending to support the opponent's legal theory. See First Nat'l
15 Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968).  In opposing
16 a motion for summary judgment, the nonmovant cannot simply rely
17 on allegations or unsupported assertions.  See Rule 56(e).
18 Instead, the nonmovant must set out specific facts in
19 declarations, depositions, answers to interrogatories, or
20 authenticated documents, as provided in Rule 56(e), that
21 contradict the facts shown in the moving party's declarations
22 and documents and show that there is a genuine issue of material
23 fact for trial.  See id.  If the nonmovant does not submit
24 evidence in opposition, summary judgment, if appropriate, may be
25 entered against the nonmovant.  See id.
26 ///
27 ///
28 ///

REPORT AND RECOMMENDATION - 7
c:\data\6779cg

1    **B.   Federal Rule of Civil Procedure 8(a) and Plaintiff's**
          **claim against Defendant MIT**
2

3        Federal Rule of Civil Procedure 8(a)(2) requires that a
4   complaint contain a "short and plain statement of the claim
5   showing that the pleader is entitled to relief."  Fed. R. Civ.
6   Pro. 8.  Here, several portions of Plaintiff's complaint fail to
7   satisfy that standard.  Though Plaintiff's claims appear to
8   arise out of the alleged fraudulent procurement of Plaintiff's
9   ideas, the complaint lists violations of M.G.L. 92 § 42, 18
10  U.S.C. § 1962, and 15 U.S.C. § 2 as well as "other state and
11  federal laws."

12       Plaintiff's complaint fails to allege a short plain
13  statement of a claim in two areas.  First, under Counts I-IV of
14  his complaint, Plaintiff asserts that Defendants' actions
15  violate "other state and federal laws."  (Doc. #1 at 16-19).  On
16  its face, this assertion does not meet the requirements of a
17  plain statement of a claim showing that the pleader is entitled
18  to relief.  See Rule 8.  Specifically, by simply stating
19  Defendants' actions violate "other state and federal laws," the
20  pleading fails to associate any specific legal claim with any
21  factual allegations.

22       Furthermore, under Count V of the complaint, Plaintiff
23  makes unintelligible factual allegations that "defendants
24  conspired to engage, and engaged in unlawful monopolistic
25  practices by using a fraudulently procured patent attempt to
26  monopolize and to monopolize the market in time lapse
27  autostereoscopic imaging systems."  (Doc. #1 at 19).  Moreover,
28  Plaintiff alleges that Defendant MIT "engaged in unlawful

REPORT AND RECOMMENDATION - 8
c:\data\6779cg

1 monopolistic practices by using a fraudulently procured patent
2 to attempt to monopolize and to monopolize the market in the
3 time lapse autostereoscopic imaging systems." Id. However,
4 under Count V, Plaintiff does not allege that Defendants
5 violated any specific federal or state laws. Because
6 Plaintiff's arguments appear to be the same or similar to his
7 arguments under Count III and Count IV, that Defendants'
8 monopolistic actions violate 15 U.S.C. § 2 of the Sherman Act,
9 the Court will review herein whether there is a genuine issue of
10 material fact as to Plaintiff's Sherman Act claims. Other than
11 his possible antitrust claim, Plaintiff's complaint under Count
12 V fails to associate any federal legal claims with any specific
13 factual allegations. In the face of these infirmities, the
14 Court declines to consider Plaintiff's unintelligible assertions
15 for failure to comply with Rule 8(a)(2).[3]

16     The Court previously pointed out these infirmities in
17 recommending that Defendant Microvision's motion for summary
18 judgment be granted on January 5, 1999. (Doc. #56). As
19 previously stated, the District Court adopted this Court's
20 report and recommendations dated January 5, 1998 and January 14,
21 1998 and granted Defendant Microvision's motion for summary
22 judgment in an Order dated March 2, 1999. (Doc. #68). In light
23 of the foregoing, the Court recommends that the foregoing
24 intelligible assertions against Defendants be dismissed for
25 failure to comply with Rule 8(a)(2).

26

27     [3] If Plaintiff intends to raise a state law claim in Count
28 V, the Court recommends that supplemental jurisdiction be
declined as discussed herein. (Infra, at page 317-18).

REPORT AND RECOMMENDATION - 9
c:\data\6779og

C.    **Federal Claims**

1.    **COUNTS II and IV: Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962**

Under Counts II and IV, Plaintiff claims that Defendants Kollin, Furness, University of Washington, Weinberg and others violated 18 U.S.C. § 1962 of RICO. Specifically, under Count II, Plaintiff argues that Defendants Kollin, Furness, University of Washington and others formed an "ongoing organization" to obtain Plaintiff's trade secrets and to use "fraudulent [sic] procured patents" to solicit business in interstate commerce. (Doc. #1 at 17). As previously stated, Plaintiff does not specifically allege that Defendants Weinberg or MIT participated in the violations Plaintiff alleges under Count II. (Id.).

Under Count IV, Plaintiff claims that Defendants Kollin, Weinberg and others used Plaintiff's trade secrets to intimidate, extort and cause physical violence to Plaintiff and his family. (Id. at 18). However, Plaintiff does not specifically allege that Defendants University of Washington, Furness or MIT participated in the violations Plaintiff alleges under Count IV. (Id.).

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, provides a private civil action to recover treble damages for injury "by reason of a violation of" its substantive provisions. See 18 U.S.C. § 1964(c). To prevail on a civil RICO theory, a Plaintiff must establish: (1) a "pattern of racketeering activity," including at least two "predicate acts," (2) a criminal enterprise in which defendants participated, and (3) a causal relationship between the

REPORT AND RECOMMENDATION - 10
c:\data\6779ng

1  predicate acts and the harm suffered.  <u>See Sedima, S.P.R.L. v.</u>
2  <u>Imrex Co., Inc.</u>, 473 U.S. 479, 496-97 (1985); 18 U.S.C. §§ 1961-
3  68.

4      To state a claim under RICO, Plaintiff must first
5  demonstrate that the defendants engaged in at least two acts of
6  "racketeering activity," as that term is defined in 18 U.S.C. §
7  1961(1).  <u>See Sun Sav. & Loan Ass'n v. Dierdorff</u>, 825 F.2d 187,
8  191 (9th Cir. 1987).  Plaintiff has not established a genuine
9  issue of material fact as to establish a pattern of racketeering
10 activity in either Count II or Count IV because he has failed to
11 establish a genuine issue of material fact as to at least two
12 predicate acts, a necessary element of the prima facie case
13 under RICO.  Because Plaintiff has not met his burden on summary
14 judgment to establish a pattern of racketeering activity for
15 either Count II or Count IV, the Court need not address the
16 other elements of the prima facie case under RICO.

17          a.   Count II

18     In Count II, Plaintiff's complaint alleges that Defendants
19 Kollin, Furness and University of Washington violated RICO by
20 seeking interstate business, soliciting government contracts,
21 and registering and selling interstate securities.[4]  However,
22 these acts do not constitute predicate acts of racketeering,
23 pursuant to § 1961(1).  <u>See</u> § 1961(1).  In opposition to their
24 motion for summary judgment, Plaintiff apparently argues that he

25 _____

26     [4] Although fraud in the sale of securities is considered a
    predicate criminal act under § 1961(1)(D), Plaintiff is
27  disallowed from alleging fraud in the sale of securities as a
    predicate act *in a private cause of action under § 1964 (c)*.
28  <u>See</u> 18 U.S.C. § 1964 (c).

REPORT AND RECOMMENDATION - 11
c:\data\6779cg

1  can establish a pattern of racketeering activity because
2  "Defendant Kollin committed grand larceny at least three times
3  by the theft of the plaintiff's trade secrets whose value has
4  been proved to be in excess of $15,000,000." (Doc. # 109 at 5).
5  Also, Plaintiff alleges new facts supporting two other predicate
6  activities of the use of the United States mails and wires to
7  transmit stolen property and to commit actual fraud before the
8  United States Patent Office by Defendants. (Id.). However,
9  even with the new allegations offered in his response and
10 assuming such acts constituted predicate acts under RICO,
11 Plaintiff has failed to support his allegations of a pattern of
12 racketeering activity "with proof in the form of admissible
13 evidence that could carry the burden of proof of [the] . . .
14 claim at trial." Mitchell, 12 F.3d at 1315. As a party
15 opposing summary judgment, Plaintiff must respond with more than
16 conclusory allegations or speculative statements. See Nat'l
17 Steel Corp v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir.
18 1997). Plaintiff is required at the summary judgment stage to
19 produce evidence of a genuine issue of material fact. He has
20 failed to show any evidence supporting any of his allegations
21 against Defendants Kollin, Furness or the University of
22 Washington in Count II. See Celotex, 477 U.S. at 322-23.
23      Furthermore, Plaintiff's claim in Count II fails to state a
24 claim under RICO against Defendants MIT and Weinberg.
25 Specifically, as to Defendants MIT and Weinberg, Plaintiff's
26 claims fail under Count II because Plaintiff does not allege any
27 specific facts to support a claim against such defendants.
28 Accordingly, Plaintiff has failed to show that a genuine issue

REPORT AND RECOMMENDATION - 12
c:\data\6779cg

1  of material fact exists in Count II and, therefore, Defendants
2  are entitled to summary judgment as a matter of law on his RICO
3  claims.

4                    b.    **Count IV**

5      In Count IV, Plaintiff alleges that Defendants Kollin and
6  Weinberg and others "communicated trade secret information to
7  third parties, used intimidation, threats of extortion and
8  physical violence to Plaintiff's person family and property to
9  retrain competition and impede interstate commerce."   (Doc. #1
10 at 18).  Moreover, in response to Defendant Weinberg's motion
11 for summary judgment, Plaintiff alleges that Defendant
12 Weinburg's "fraudulent procurement of a patent is a basis for
13 claims of damages under the . . . civil provisions of the RICO
14 Act (18 U.S.C. § 1962)."  (Doc. #135 at 4).  In response to
15 Defendant Kollin's motion for summary judgment, Plaintiff
16 appears to allege predicate acts of grand larceny.  Finally,
17 Plaintiff alleges that both Defendants Kollin and Weinberg
18 committed other predicate acts of using the United States mails
19 and wires to transmit stolen property and using the United
20 States mails and wires to commit actual fraud before the United
21 States Patent Office.  (Doc. #109 at 5-8; Doc. #148 at 4).

22     Again, Plaintiff has failed to meet his burden on summary
23 judgment to present any proof in the form of admissible evidence
24 to support his allegations that Defendant Weinberg fraudulently
25 procured a U.S. Patent or that Defendant Kollin committed
26 larceny, or that either Defendant committed fraud or used the
27 United States mails and wires to transmit stolen property.  Even
28 assuming such acts constitute predicate acts within the meaning

REPORT AND RECOMMENDATION - 13
c:\data\6779cg

1 of RICO, Plaintiff has failed to meet his burden on summary
2 judgment in establishing a genuine issue of material fact as to
3 a pattern of racketeering activity, which is a necessary element
4 of a prima facie case under RICO. Plaintiff has not come
5 forward with affidavits or other discovery materials indicating
6 that there exists a genuine issue for trial. See Rule 56(e).
7 Plaintiff's claims are wholly unsupported, conclusory and
8 speculative allegations and should be dismissed. See Nat'l
9 Steel Corp., 121 F.3d at 502.

10 Moreover, Plaintiff's claim in Count IV fails to state a
11 claim under RICO as to Defendants University of Washington,
12 Furness and MIT. Specifically, as to Defendants University of
13 Washington, Furness and MIT, Plaintiff's claims fail under Count
14 IV because he does not allege any specific facts to support a
15 claim against such Defendants in Count IV.

16 Accordingly, Plaintiff has failed to show that genuine
17 issues of material fact exists in Count II or Count IV and,
18 therefore, Defendants are entitled to summary judgment as a
19 matter of law as to his RICO claims.

20     **2.   COUNTS III, IV and V: The Sherman Antitrust Act,
21        15 U.S.C. § 2**

22 In Counts III, IV and V, Plaintiff claims that Defendants
23 Kollin, Furness, University of Washington, MIT, and Weinberg
24 violated 15 U.S.C. § 2 by engaging in unfair competition and
25 monopolistic practices. (Doc. #1 at 17-19). Section 2 of the
26 Sherman Act makes it an offense for any person to "monopolize,
27 or attempt to monopolize, or combine or conspire ... to
28 monopolize any part of the trade or commerce among the several

REPORT AND RECOMMENDATION - 14
c:\data\6779cg

1  States."  See 15 U.S.C. § 2 (1998).  To prevail on a Section 2
2  attempted monopolization claim, Plaintiff must establish:  "(1)
3  a specific intent to control prices or destroy competition; (2)
4  predatory or anticompetitive conduct directed at accomplishing
5  that purpose; (3) a dangerous probability of achieving 'monopoly
6  power,' and (4) causal antitrust injury."  Rebel Oil Co., Inc.
7  v. Atlantic Richfield, Co., 51 F.3d 1421, 1434 (9th Cir. 1995)
8  (quoting McGlinchy v. Shell Chem. Co., 845 F.2d 802, 811 (9th
9  Cir. 1988).  The requirements of a Section 2 monopolization
10 claim and an attempted monopolization claim are similar, and
11 differ primarily in the requisite intent and the necessary level
12 of monopoly power.  See California Computer Products, Inc. v.
13 Int'l Bus. Machines Corp., 613 F.2d 727, 736-37 (9th Cir. 1979).
14 To prevail on a Section 2 monopoly claim, the Plaintiff is
15 required to prove that Defendants:  (1) possessed monopoly power
16 in the relevant market and (2) willfully acquired or maintained
17 that power.  See id.  Furthermore, under both causes of action,
18 Plaintiff must also establish antitrust injury.  See Cost
19 Management Services, Inc. v. Washington Natural Gas Co., 99 F.3d
20 937, 949-50 (9th Cir. 1996).

21      Plaintiff has failed to allege specific facts to support
22 his claims of monopolization or attempted monopolization.  See
23 Rule 56(e).  Plaintiff's assertions that all of the Defendants
24 have monopolized or attempted to monopolize the market are
25 conclusory and unfounded.  In Counts III, IV and V, Plaintiff
26 has failed to establish a genuine issue of material fact that
27 Defendants have any monopoly power or any probability of
28 establishing monopoly power, a necessary element of Plaintiff's

REPORT AND RECOMMENDATION - 15
c:\data\6779cg

1 claims under the Sherman Antitrust Act. See Rebel Oil, 51 F.3d
2 at 1434; California Computer Products, 613 F.2d at 727.  In
3 preparing his response, Rule 56 requires that Plaintiff submit
4 affidavits or other admissible evidence in opposition to a
5 motion for summary judgment.  Plaintiff offers no evidence of
6 any power to monopolize, or probability of establishing monopoly
7 power, or affidavits, declarations or otherwise in his response
8 to Defendants' motions for summary judgment.  See Celotex, 477
9 U.S. at 324.  While he attaches exhibits to his responses to
10 Defendants' motions for summary judgment, none of the exhibits
11 support his claims against such Defendants under the Sherman
12 Antitrust Act.  (Doc. #109, attached exhibits; Doc. #135;
13 attached exhibits; Doc. #148, attached exhibits).  Plaintiff's
14 responses to the Defendants' motions for summary judgment are
15 wholly conclusory on his Sherman Act claims and thus inadequate
16 to meet his burden under Rule 56.  Because Plaintiff has failed
17 to establish a genuine issue of material fact as to the issue of
18 monopoly power or any probability of establishing monopoly power
19 under the Sherman Act, the Court need not address the other
20 elements of his prima facie case.

21      Moreover, in opposition to Defendant MIT's motion for
22 summary judgment, Plaintiff appears to assert new claims against
23 Defendant MIT for conspiracy to commit an offense in violation
24 of 18 U.S.C. § 371, numerous violations of the RICO Act under 18
25 U.S.C. § 1961, false claims against the United States
26 government, fraud in violation of 18 U.S.C. § 1341, interference
27 with business relations, interference with prospective business
28 relations, and conspiracy to unlawfully obtain trade secrets in

REPORT AND RECOMMENDATION - 16
c:\data\6779vg

1  violation of 18 U.S.C. § 1831 & 1832.  (Doc. #148 at 4).

2  Plaintiff's additional claims against Defendant MIT must fail

3  for two reasons.  First, Plaintiff has neglected to allege such

4  claims against Defendant MIT in his complaint, and therefore,

5  they are not within the scope of this litigation.  (Doc. #1).

6  Even if Plaintiff had alleged such claims in his complaint,

7  Plaintiff's numerous allegations against Defendant MIT, must

8  fail because he does not support any of his allegations with a

9  declaration or any other admissible evidence to establish a

10 genuine issue of material fact.  As Judge Lasnik previously

11 pointed out to Plaintiff in his order granting Defendant's

12 Microvision's motion for summary judgment, (Doc. #68),

13 Plaintiff's burden on summary judgment is "to proffer sufficient

14 facts to show that the evidence sought exists, and that it would

15 prevent summary judgment."  Nidds v. Schindler Elevator Corp,

16 113 F.3d 912, 921 (9th Cir. 1996).  Plaintiff may not rest on

17 mere allegations in responding to a motion for summary judgment.

18 See Rule 56(e).  Defendants are entitled to summary judgment as

19 a matter of law as to Plaintiff's claims that Defendants

20 violated 15 U.S.C. § 2.

21      D.   Supplemental Jurisdiction over State Law Claims

22      Pursuant to 28 U.S.C. § 1367(a), the Court has the power to

23 exercise supplemental jurisdiction over state claims which arise

24 out of the same case or controversy as the federal claims over

25 which it has original jurisdiction alleged in the complaint.

26 See 28 U.S.C. § 1367(a) (1998).  However, purusant to §

27 1367(c)(3) "district courts may decline to exercise supplemental

28 jurisdiction over a claim under subsection (a) if . . . the

REPORT AND RECOMMENDATION - 17
c:\data\6779cg

1  district court has dismissed all claims over which it has
2  original jurisdiction." Id.

3      In light of the foregoing recommendation that Plaintiff's
4  federal law claims be dismissed, supplemental jurisdiction is
5  not warranted under the circumstances. Because Plaintiff has
6  failed to show a genuine issue of material fact as to his
7  federal law claims, the Court recommends that supplemental
8  jurisdiction over Plaintiff's state law claims alleged in is
9  complaint, including his claims under Count I, be declined
10 pursuant to § 1367(c).

11      **E.    Plaintiff's Claims Against Defendant Teledyne Display**
             **Technologies**
12

13      Plaintiff's sole claim against Defendant TIT should be
14 dismissed.  Plaintiff asserts a state law claim against
15 Defendant TIT in Count I.  Moreover, Plaintiff does not allege
16 any specific claims in Counts II-V to support a federal claim
17 for relief against Defendant TIT.  The Court notes that Lane
18 Powell Spears Lubersky, L.L.P. filed a notice of appearance on
19 behalf of Defendant TIT on June 11, 1998.  (Doc. #7).  While
20 Defendant TIT has not filed an answer, a motion to dismiss, or a
21 motion for summary judgment in this action, Plaintiff's claim
22 against Defendant TIT should be dismissed because his claim is
23 solely based on state law.  As the Court previously discussed,
24 supplemental jurisdiction over Plaintiff's state law claims
25 should be declined because Plaintiff's federal claims are wholly
26 speculative, conclusory and without a basis in fact.  Because
27 the Court recommends that supplemental jurisdiction over the
28 state law claims be denied, Defendant TIT should be dismissed

REPORT AND RECOMMENDATION - 18
c:\data\6779cg

1  from this action.

2    **F.    Remaining Defendants**

3    It does not appear on the record that Defendants Jean
4  Weidemier, William Kennedy, or Brian Hart have ever been
5  properly served with the complaint in this action.  Plaintiff
6  has never informed the Court on what steps he has taken to serve
7  the complaint on such Defendants, as is his responsibility.  No
8  waiver of service, appearance by an attorney or answer to the
9  complaint has been filed by any of those defendants.  Since they
10 never received service, Jean Weidemier, William Kennedy, or
11 Brian Hart have never been parties to this action.  Because
12 there are no more defendants remaining, this action should be
13 dismissed with prejudice.

14 **IV.  CONCLUSION**

15    In light of the foregoing, the Court, recommends that
16 motions for summary judgment of Defendants University of
17 Washington, Kollin, Furness, Weinberg and MIT be GRANTED, that
18 supplemental jurisdiction over Plaintiff's state law claims be
19 DECLINED, that Plaintiff's claims against Defendants TIT,
20 Weidemier, Kennedy and Hart be DISMISSED, and that this action
21 be DISMISSED with prejudice.

22    DATED this 12th day of February, 2000.

23

24                                          DAVID E. WILSON
25                                          United States Magistrate Judge

26

27

28

REPORT AND RECOMMENDATION - 19
c:\data\6779eg

1
2
3                      UNITED STATES DISTRICT COURT
4                     WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE
5   DENNIS J. SOLOMON,                    )
6              Plaintiff,                 )      CASE NO.   C98-258L
7          v.                             )
                                          )      ORDER
8   UNIVERSITY OF WASHINGTON,             )
    et al.,                               )
9                                         )
               Defendants.                )
10  _____)

11       The Court, having reviewed the Report and Recommendation of the Honorable David E.

12  Wilson, United States Magistrate Judge, and the balance of the record, does hereby find and

13  ORDER:

14       (1)   The Court adopts the Report and Recommendation.

15       (2)   Defendants University of Washington, Kollin, Furness, Weinberg, and MIT's

16             motions for summary judgment are GRANTED.

17       (3)   The supplemental jurisdiction over Plaintiff's state law claims are DECLINED.

18       (4)   Plaintiff's claims against Defendants TIT, Weidemier, Kennedy, and Hart are

19             DISMISSED.

20       (5)   This action is dismissed with prejudice.

21       (6)   The Clerk is directed to send copies of this Order to plaintiff, to all counsel of

22             record, and to the Honorable David E. Wilson.

23       DATED this _____ day of _____, 2000.

24

25                                    _____
                                      ROBERT S. LASNIK.
26                                    United States District Judge

27

28  ORDER - 1
    c:\data\6780cg

# United States District Court

### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

DENNIS J. SOLOMON,
     Plaintiff,

             v.

UNIVERSITY OF WASHINGTON, et al.
     Defendants.

JUDGMENT IN A CIVIL CASE

CASE NUMBER:  C98-258L

___ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

_X_ **Decision by Court.** This action came to consideration before the Court. The issues have been considered and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

    The Report and Recommendation is adopted and approved. Defendants University of Washington, Kollin, Furness, Weinberg, and MIT's motions for summary judgment are granted. The supplemental jurisdiction over Plaintiff's state law claims are declined. Plaintiff's claims against Defendants TTT, Weidemier, Kennedy, and Hart are dismissed. This action is dismissed with prejudice.  .

Dated this _____ day of _____, 2000.

                                                 BRUCE RIFKIN
                                                  Clerk

Deputy Clerk

FILED
LODGED
ENTERED
RECEIVED

APR 7 2000

BY
CLERK AT SEATTLE
U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENNIS J. SOLOMON,

       Plaintiff,

       v.

UNIVERSITY OF WASHINGTON, et al.,

       Defendants.

Case No. C98-0258L

ORDER

The Court, having reviewed the Report and Recommendation of United States Magistrate Judge David E. Wilson, the balance of the record, and the objections filed by plaintiff on February 29, 2000 and March 2, 2000, does hereby find and ORDER:[1]

(1)    The Court adopts the Report and Recommendation;

(2)    Defendants University of Washington, Kollin, Furness, Weinberg, and Massachusetts Institute of Technology's Motions For Summary Judgment are GRANTED;

(3)    The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims;

(4)    Plaintiff's claims against defendants Teledyne Imaging Technologies, Weidemier, Kennedy, and Hart are DISMISSED;

---

[1] The Court does not consider oral argument to be necessary in this case, and plaintiff's request is therefore denied.

ORDER - 1

1

(5)     This action is DISMISSED with prejudice;

2

(6)     Plaintiff's Motion for a Continuance, filed after completion of briefing of the

3

summary judgment motions and after the Report and Recommendation was

4

issued, is DENIED;

5

(7)     The Clerk is directed to send copies of this order to plaintiff, all counsel of

6

record, and to the Honorable David E. Wilson.

7

The Clerk of the Court is directed to send copies of this order to all counsel of record.

8

DATED this _7th_ day of April, 2000.

9

10

Robert S. Lasnik
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 2

# United States District Court

### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

**FILED**
**LODGED**
— ENTERED
— RECEIVED

**FEB 15 2000**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

DENNIS J. SOLOMON,
  Plaintiff,

FILED
LODGED
ENTERED
RECEIVED

**APR 13 2000**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

v.

UNIVERSITY OF WASHINGTON, et al.
  Defendants.

**JUDGMENT IN A CIVIL CASE**

CASE NUMBER:  C98-258L

___  **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

_X_  **Decision by Court.** This action came to consideration before the Court. The issues have been considered and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED**

The Report and Recommendation is adopted and approved. Defendants University of Washington, Kollin, Furness, Weinberg, and MIT's motions for summary judgment are granted. The supplemental jurisdiction over Plaintiff's state law claims are declined. Plaintiff's claims against Defendants TIT, Weidemier, Kennedy, and Hart are dismissed. This action is dismissed with prejudice.

Dated this _14_ day of _April_ , 2000.

BRUCE RIFKIN
Clerk

Deputy Clerk

157

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 20 2001

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

---

DENNIS J. SOLOMON,

      Plaintiff-Appellant,

   v.

MICROVISION; et al.,

      Defendants-Appellees.

No. 00-35431

D.C. No. CV-98-00258-RSL

MEMORANDUM[*]

**RECEIVED**

JUL 24 2001

MILLER NASH LLP

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Submitted July 9, 2001 [**]

Before:    KOZINSKI, T. G. NELSON, and TALLMAN, Circuit Judges.

Dennis J. Solomon appeals pro se the district court's summary judgment in

favor of defendants in his action arising from the alleged theft of trade secrets.  We

---

[*]    This disposition is not appropriate for publication and may not be cited to or
by the courts of this circuit except as may be provided by 9th Cir. R. 36-3.

[**]    The panel unanimously finds this case suitable for decision without oral
argument.  *See* Fed. R. App. P. 34(a)(2).  Accordingly, appellant's request for oral
argument is denied.

have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo summary judgments, *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998), and we affirm.

Solomon's appellate arguments fail to address the legal or factual basis upon which the district court granted summary judgment. Solomon has therefore abandoned these issues. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (deeming abandoned all issues raised in a brief not supported by argument).

Solomon's remaining contentions are without merit.

Appellee Teledyne Display Technology's renewed motion to strike the opening brief is denied.

**AFFIRMED.**

2

CC: TO JUDGE SA

JUDGMENT

========================================================================

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JAN - 3 2002
MANDATE ISSUED

- - - - - - - - - - - - - -

NO. 00-35431
CT/AG#: CV-98-00258-RSL

FILED
LODGED
RECEIVED

MAIL

DENNIS J. SOLOMON

Plaintiff - Appellant

JAN 0 7 2002

v.

MICROVISION

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

Defendant

and

UNIVERSITY OF WASHINGTON; JOEL KOLLIN; THOMAS FURNESS; MIT;
JEAN WEIDEMIER; TELEDYNE DISPLAY TECHNOLOGIES; WILLIAM
KENNEDY; BRIAN HART; MORRIS WEINBERG

Defendants - Appellees

- - - - - - - - - - - - - - - - - - - -

APPEAL FROM the United States District Court for the
Western District of Washington (Seattle).

THIS CAUSE came on to be heard on the Transcript of the
Record from the United States District Court for the Western
District of Washington (Seattle) and was duly submitted.

ON CONSIDERATION WHEREOF, It is now here ordered and
adjudged by this Court, that the judgment of the said District
Court in this cause be, and hereby is AFFIRMED.

CV 98-00258 #000001-6

**Filed and entered** July 20, 2001

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

JAN - 3 2002

by
Deputy Clerk

CLOSED, JURYDEMAND

# U.S. District Court
## Western District of Washington (Seattle)
## CIVIL DOCKET FOR CASE #: 2:98-cv-00258-RSL

Solomon v. University of WA, et al
Assigned to: Hon Robert S. Lasnik
Demand: $0
Cause: 18:1961 Racketeering (RICO) Act

Date Filed: 03/02/1998
Jury Demand: Plaintiff
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**Dennis J Solomon**

represented by **Dennis J Solomon**
P.O. Box 289
Yarmouth Port, MA 02675
508-394-9221
Fax: 508-394-9221
PRO SE

V.

**Defendant**

**Microvision**
*TERMINATED: 03/02/1999*

represented by **Albert Gidari, Jr**
PERKINS COIE
1201 3RD AVE
STE 4800
SEATTLE, WA 98101-3099
206-583-8888
Fax: 206-328-4000
Email: agidari@perkinscoie.com
*TERMINATED: 03/02/1999*
*LEAD ATTORNEY*

**Dana R Pedersen**
PERKINS COIE
1201 3RD AVE
STE 4800
SEATTLE, WA 98101-3099
206-583-8888
Fax: 206-583-8661
*TERMINATED: 03/02/1999*
*LEAD ATTORNEY*

**Monika Vasil**
SUMMIT LAW GROUP
315 FIFTH AVE S
STE 1000
SEATTLE, WA 98104-2682
206-676-7000
Fax: 206-281-9881
*TERMINATED: 03/02/1999*

*LEAD ATTORNEY*

**Susan Donnelly Fahringer**
PERKINS COIE
1201 3RD AVE
STE 4800
SEATTLE, WA 98101-3099
206-583-8888
Fax: FAX 583-8500
Email: SFahringer@perkinscoie.com
*TERMINATED: 03/02/1999*
*LEAD ATTORNEY*

**Defendant**
**University of Washington**                      represented by **Paul Joseph Triesch**
ATTORNEY GENERAL'S OFFICE
TORT CLAIMS DIVISION
900 4TH AVE
STE 2200
SEATTLE, WA 98164-1012
206-464-7352
Email: pault@atg.wa.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Joel Kollin**                                   represented by **Paul Joseph Triesch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Thomas Furness**                                represented by **Paul Joseph Triesch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**MIT**                                           represented by **Beth Mattler Picardo**
REED MCCLURE
601 UNION ST
STE 4901
SEATTLE, WA 98101-3920
206-292-4900
Fax: 206-386-7056
*TERMINATED: 07/17/2000*
*LEAD ATTORNEY*

**Mary Savilla Petersen**
MILLER NASH LLP
601 UNION ST
4400 TWO UNION SQUARE
SEATTLE, WA 98101-2352

206-622-8484
Fax: 206-622-8484
Email: mary.petersen@millernash.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jean Weidemier**

**Defendant**

**Teledyne Display Technologies**                    represented by **Larry Steven Gangnes**
LANE POWELL PC (SEA)
1420 FIFTH AVE
STE 4100
SEATTLE, WA 98101-2338
206-223-7000
Email: gangnesl@lanepowell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**William Kennedy**

**Defendant**

**Brian Hart**

**Defendant**

**Altma Stage Lighting Company**                    represented by **Craig S Jepson**
*TERMINATED: 09/02/1998*                    SEED INTELLECTUAL PROPERTY
LAW GROUP PLLC
701 5TH AVE
STE 6300
SEATTLE, WA 98104-7092
206-622-4900
Fax: 206-622-4900
*TERMINATED: 09/02/1998*
*LEAD ATTORNEY*

**Paul T Meiklejohn**
DORSEY & WHITNEY LLP
1420 5TH AVE
STE 3400
SEATTLE, WA 98101
206-903-8800
Fax: FAX 903-8820
Email: meiklejohn.paul@dorseylaw.com
*TERMINATED: 09/02/1998*
*LEAD ATTORNEY*

**Ramsey M Al-Salam**
PERKINS COIE
1201 3RD AVE
STE 4800

SEATTLE, WA 98101-3099
206-359-6385
Fax: FAX 359-9000
Email: ralsalam@perkinscoie.com
*TERMINATED: 09/02/1998*
*LEAD ATTORNEY*

**Defendant**

**Morris Weinberg**                                represented by **Jeffrey M Thomas**
GORDON MURRAY TILDEN
1001 4TH AVE
STE 4000
SEATTLE, WA 98154
206-467-6477
Email: jthomas@gmtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maura L Scott**
HELLER EHRMAN WHITE &
MCAULIFFE
701 5TH AVE
STE 6100
SEATTLE, WA 98104-7098
206-447-0900
Fax: FAX 447-0849
Email: mscott@hewm.com
*TERMINATED: 05/25/2000*
*LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/02/1998 | 1 | COMPLAINT & Jury Demand (Summons(es) NOT issued) Receipt # 248009 (MD) Modified on 03/16/1998 (Entered: 03/09/1998) |
| 03/12/1998 | 2 | MINUTE ORDER: by Judge William L. Dwyer recuses himself and the Case reassigned to Judge Carolyn R. Dimmick (cc: counsel, WLD, CRD, Intake) (MD) (Entered: 03/13/1998) |
| 03/13/1998 | 3 | ORDER OF REFERENCE by Judge Carolyn R. Dimmick Case referred to Magistrate Judge David E. Wilson (cc: counsel, CRD, DEW, PV) (KERR) (Entered: 03/16/1998) |
| 03/18/1998 |   | SUMMONS ISSUED in blank as to defendants (Service Packet and Pro Se Packet sent to pltf) (KERR) (Entered: 03/18/1998) |
| 05/08/1998 | 4 | ATTORNEY APPEARANCE for defendant Microvision by Susan Donnelly Fahringer, Albert Gidari Jr (KERR) (Entered: 05/11/1998) |
| 05/26/1998 |   | ENT- Per cnsl, this is not a patent case but is a RICO case. I corrected docket sheet and notified Patent Office in DC. (MD) (Entered: 05/26/1998) |
| 06/09/1998 | 5 | ATTORNEY APPEARANCE for defendant MIT by Beth Mattler Picardo (KERR) (Entered: 06/10/1998) |

| 06/09/1998 | 6 | STIPULATION FOR EXTENSION OF TIME TO ANSWER COMPLAINT (KERR) (Entered: 06/10/1998) |
|---|---|---|
| 06/11/1998 | 7 | ATTORNEY APPEARANCE for defendant Teledyne Display by Larry Steven Gangnes (KERR) (Entered: 06/12/1998) |
| 06/11/1998 | 8 | AFFIDAVIT OF SERVICE by defendant Teledyne Display of attorney appearance [7-1] (KERR) (Entered: 06/12/1998) |
| 06/15/1998 | 9 | NOTICE OF FILING WAIVER OF SERVICE by plaintiff (KERR) (Entered: 06/15/1998) |
| 06/15/1998 | 10 | WAIVER OF SERVICE of summons upon defendant Microvision mailed on 5/11/98 (KERR) (Entered: 06/15/1998) |
| 06/15/1998 | 11 | WAIVER OF SERVICE of summons upon defendant MIT mailed on 5/1/98 (KERR) (Entered: 06/15/1998) |
| 06/17/1998 | 12 | ATTORNEY APPEARANCE for defendant University of WA by Paul Joseph Triesch (KERR) (Entered: 06/19/1998) |
| 06/17/1998 | 13 | REQUEST by defendant University of WA for statement of damages (KERR) (Entered: 06/19/1998) |
| 06/19/1998 | 14 | RETURN OF SERVICE of summons and complaint executed upon defendant University of WA on 6/15/98 (KERR) (Entered: 06/22/1998) |
| 06/22/1998 | 15 | AMENDED ATTORNEY APPEARANCE for defendant University of WA, defendant Joel Kollin, defendant Thomas Furness by Paul Joseph Triesch (KERR) (Entered: 06/23/1998) |
| 06/22/1998 | 16 | ATTORNEY APPEARANCE for defendant Morris Weinberg by Jeffrey M Thomas (KERR) (Entered: 06/23/1998) |
| 06/22/1998 | 17 | AFFIDAVIT OF SERVICE by defendant Morris Weinberg of attorney appearance [16-1] (KERR) (Entered: 06/23/1998) |
| 06/25/1998 | 18 | AMENDED AFFIDAVIT OF SERVICE by defendant Morris Weinberg of attorney appearance [16-1] (KERR) (Entered: 06/25/1998) |
| 06/26/1998 | 19 | AFFIDAVIT OF SERVICE by defendant University of WA, defendant Joel Kollin, defendant Thomas Furness of amd attorney appearance [15-1] (KERR) (Entered: 06/29/1998) |
| 07/01/1998 | 20 | ATTORNEY APPEARANCE for defendant Altman Stage Light by Paul T. Meiklejohn, Craig S Jepson, Ramsey M Al-Salam (dktclk) (Entered: 07/02/1998) |
| 07/01/1998 | 21 | AFFIDAVIT OF SERVICE by defendant Altman Stage Light of attorney ntc [20-1] (dktclk) (Entered: 07/02/1998) |
| 07/02/1998 | 22 | MOTION by defendant Altman Stage Light to dismiss for lack of personal jurisdiction and for attorney's fees & costs NOTED FOR 7/24/98 (PM) (Entered: 07/03/1998) |
| 07/02/1998 | 23 | MEMORANDUM by defendant Altman Stage Light in support of motion to dismiss for lack of personal jurisdiction and for attorney's fees & costs [22-1] (PM) (Entered: 07/03/1998) |
| 07/02/1998 | 24 | DECLARATION of Randall Altman in support of Altman Stage Lighting Co's |

| | | motion to dismiss for lack of personal jurisdiction and for attorney's fees & costs [22-1] (PM) (Entered: 07/03/1998) |
|---|---|---|
| 07/02/1998 | | LODGED ORDER: re: motion to dismiss for lack of personal jurisdiction and for attorney's fees & costs [22-1] (PM) (Entered: 07/03/1998) |
| 07/02/1998 | 25 | AFFIDAVIT OF SERVICE by defendant Altman Stage Light of motion to dismiss for lack of personal jurisdiction and for attorney's fees & costs [22-1], of memorandum [23-1], of order lodged [0-0], of declaration [24-1] (PM) (Entered: 07/03/1998) |
| 07/18/1998 | 26 | STATEMENT OF GENERAL & SPECIAL DAMAGES by plaintiff Dennis J Solomon (dktclk) (Entered: 07/20/1998) |
| 07/20/1998 | 27 | ANSWER & AFFIRMATIVE DEFENSES to complaint [1-1] by defendant Morris Weinberg (dktclk) (Entered: 07/21/1998) |
| 07/20/1998 | 28 | AFFIDAVIT OF SERVICE by defendant Morris Weinberg of answer [27-1] (dktclk) (Entered: 07/21/1998) |
| 07/20/1998 | 29 | RESPONSE (OPPOSITION) by plaintiff Dennis J Solomon to dft Altman's motion to dismiss for lack of personal jurisdiction and for attorney's fees & costs [22-1] (dktclk) (Entered: 07/23/1998) |
| 07/20/1998 | 30 | AFFIDAVIT of Dennis J. Solomon re: motion response [29-1] (dktclk) (Entered: 07/23/1998) |
| 07/20/1998 | 31 | LETTER by plaintiff Dennis J Solomon requesting 20 subpoenas iss'd & mailed 7/24/98 (dktclk) Modified on 07/28/1998 (Entered: 07/23/1998) |
| 07/20/1998 | 32 | RETURN OF SERVICE of summons and complaint executed upon defendant University of WA on 6/18/98 (dktclk) (Entered: 07/23/1998) |
| 07/20/1998 | 33 | WAIVER OF SERVICE of summons upon defendant Morris Weinberg mailed on 5/18/98 (dktclk) (Entered: 07/23/1998) |
| 07/20/1998 | 34 | RETURN OF SERVICE of summons and complaint executed upon defendant Altman Stage Light on 6/12/98 (dktclk) (Entered: 07/23/1998) |
| 07/23/1998 | 35 | REPLY MEMORANDUM by defendant Altman Stage Light in support of motion to dismiss for lack of personal jurisdiction and for attorney's fees & costs [22-1] (dktclk) (Entered: 07/27/1998) |
| 07/24/1998 | 36 | AMENDED AFFIDAVIT OF SERVICE by defendant Morris Weinberg of answer [27-1] (dktclk) (Entered: 07/27/1998) |
| 08/05/1998 | 37 | PORT AND RECOMMENDATION regarding motion to dismiss for lack of personal jurisdiction and for attorney's fees & costs [22-1] by Magistrate Judge David E. Wilson NOTED FOR 8/28/98 (cc: counsel, Judge) (MD) (Entered: 08/05/1998) |
| 08/05/1998 | | LODGED ORDER: re: report & recommendation motion by Magistrate Judge David E. Wilson NOTED FOR 8/28/98 (cc: counsel, Judge) [37-1] (MD) (Entered: 08/05/1998) |
| 08/24/1998 | 38 | MOTION by plaintiff Dennis J Solomon for leave to amend complaint..... to transfer to USDC New York ... and petition MDL Panel for a Consolidation of Discovery... NOTED FOR 9/11/98 (dktclk) (Entered: 08/25/1998) |

| 08/24/1998 | 39 | WAIVER OF SERVICE of summons upon defendant Joel Kollin mailed on 7/14/98 (dktclk) (Entered: 08/25/1998) |
| 08/24/1998 | 40 | WAIVER OF SERVICE of summons upon defendant Thomas Furness mailed on 7/9/98 (dktclk) (Entered: 08/25/1998) |
| 09/02/1998 | 41 | ORDER by Judge Carolyn R. Dimmick GRANTING report & recommendation [37-1] by Magistrate Judge David E. Wilson that recommended granting dft's mtn to dismiss. Dft Altman Stage Lighting is, therefore, dismissed from this action. terminating defendant Altman Stage Light (cc: counsel, Judge) (dktclk) (Entered: 09/02/1998) |
| 09/02/1998 | 42 | ANSWER to complaint [1-1] by defendant University of WA, defendant Joel Kollin, defendant Thomas Furness (dktclk) (Entered: 09/03/1998) |
| 09/08/1998 | 43 | OBJECTION to subpoena filed by Gregg Favalora (dktclk) (Entered: 09/09/1998) |
| 09/16/1998 | 44 | MINUTE ORDER: by Judge Carolyn R. Dimmick STRIKING motion for leave to amend complaint..... to transfer to USDC New York ... and petition MDL Panel for a Consolidation of Discovery... [38-1] as moot as it relates to claims against Altman Stage Lighting Co which has been dismissed for lack of personal jurisdiction. (cc: counsel, Judges) (dktclk) Modified on 09/16/1998 (Entered: 09/16/1998) |
| 10/29/1998 | 45 | MOTION by defendant Microvision for summary judgment; ORAL ARG REQ'D NOTED FOR 11/20/98 (dktclk) (Entered: 10/30/1998) |
| 10/29/1998 | 46 | MEMORANDUM by defendant Microvision in support of motion for summary judgment and to dismiss pltf Holodeck Trust [45-1] (dktclk) (Entered: 10/30/1998) |
| 10/29/1998 | 47 | DECLARATION of Clarence T. Tegreene by defendant Microvision re motion for summary judgment [45-1] (dktclk) (Entered: 10/30/1998) |
| 10/29/1998 | 48 | DECLARATION of Richard Rutkowski by defendant Microvision re motion for summary judgment [45-1] (dktclk) (Entered: 10/30/1998) |
| 10/29/1998 |  | LODGED ORDER: re: motion for summary judgment; ORAL ARG REQ'D [45-1] (dktclk) (Entered: 10/30/1998) |
| 10/29/1998 | 49 | AFFIDAVIT OF SERVICE by defendant Microvision of motion for summary judgment [45-1] and supporting docs (dktclk) (Entered: 10/30/1998) |
| 11/16/1998 | 50 | RESPONSE (OPPOSITION) by plaintiff Dennis J Solomon to dft Microvision's motion for summary judgment [45-1] (dktclk) (Entered: 11/19/1998) |
| 11/19/1998 | 51 | REPLY BRIEF by defendant Microvision in support of motion for summary judgment [45-1] (dktclk) (Entered: 11/20/1998) |
| 11/19/1998 | 52 | AFFIDAVIT OF SERVICE by defendant Microvision of motion reply [51-1] (dktclk) (Entered: 11/20/1998) |
| 11/25/1998 | 53 | MINUTE ORDER: by Judge Carolyn R. Dimmick Case reassigned to Judge Robert S. Lasnik. Case number now ends with "L." All dates remain in effect. (cc: counsel, Judge) (dktclk) (Entered: 11/30/1998) |
| 12/16/1998 | 54 | ORDER TO SHOW CAUSE: by Magistrate Judge David E. Wilson directing pltfs to show cause by 1/14/99 why Pltf HoloDeck should not be dismissed as pltf from this case (cc: counsel, DEW) (RS) (Entered: 12/16/1998) |
| 12/17/1998 | 55 | MOTION by plaintiff Dennis J Solomon to amend NOTED FOR 1/1/99; not noted |

| | | |
|---|---|---|
| | | by pltf -- contacted pltf re: noting date (NS) (Entered: 12/21/1998) |
| 01/05/1999 | 56 | REPORT AND RECOMMENDATION regarding granting dft Microvision's motion for summary judgment [45-1] by Magistrate Judge David E. Wilson NOTED FOR 1/29/99 (cc: counsel, Judge) (RS) (Entered: 01/06/1999) |
| 01/05/1999 | | LODGED ORDER: REPORT AND RECOMMENDATION regarding granting dft Microvision's motion for summary judgment [45-1] [56-1] (RS) (Entered: 01/06/1999) |
| 01/12/1999 | 57 | NOTICE by plaintiff that the following is NOTED FOR 1/1/99 : motion to amend (RS) (Entered: 01/14/1999) |
| 01/14/1999 | 59 | SUPPLEMENTAL REPORT AND RECOMMENDATION addressing dft Microvision's motion for summ jgm by Magistrate Judge David E. Wilson NOTED FOR 1/29/99 (cc: counsel, Judge) (RS) (Entered: 01/19/1999) |
| 01/14/1999 | | LODGED ORDER: re: SUPPLEMENTAL REPORT AND RECOMMENDATION addressing dft Microvision's motion for summ jgm [59-1] (RS) (Entered: 01/19/1999) |
| 01/15/1999 | 58 | ORDER by Magistrate Judge David E. Wilson GRANTING pltfs' motion to amend the complaint [55-1] (cc: counsel, Judge) (RS) (Entered: 01/15/1999) |
| 01/25/1999 | 60 | Objections to Report and Recommendation by plaintiff NOTED FOR 2/12/99. Not noted-ltr sent (RS) (Entered: 01/26/1999) |
| 01/25/1999 | 61 | Objections to Supplemental Report and Recommendation by plaintiff Dennis J Solomon NOTED FOR 2/12/99. Not noted-ltr sent (RS) (Entered: 01/26/1999) |
| 01/25/1999 | 62 | MOTION by plaintiff Rule 56(f) motion for a continuance related to dft Microvision's motion for summary jgm NOTED FOR 2/12/99 (RS) (Entered: 01/26/1999) |
| 01/25/1999 | | LODGED ORDER: re: motion Rule 56(f) motion for a continuance related to dft Microvision's motion for summary jgm [62-1] (RS) (Entered: 01/26/1999) |
| 01/25/1999 | 63 | RESPONSE by defendant Microvision to Objections to Supplemental Report and Recommendation [61-1] (RS) (Entered: 01/28/1999) |
| 01/25/1999 | 64 | AFFIDAVIT OF SERVICE by defendant Microvision of response [63-1] (RS) (Entered: 01/28/1999) |
| 01/28/1999 | 65 | REPORT AND RECOMMENDATION regarding dismissing pltf HoloDeck Trust as a party by Magistrate Judge David E. Wilson NOTED FOR 2/19/99 (cc: counsel, Judge) (RS) (Entered: 02/01/1999) |
| 01/28/1999 | | LODGED ORDER: re: REPORT AND RECOMMENDATION regarding dismissing pltf HoloDeck Trust as a party [65-1] (RS) (Entered: 02/01/1999) |
| 02/12/1999 | 66 | SUPPLEMENTAL MEMORANDUM by plaintiff Dennis J Solomon re motion Rule 56(f) motion for a continuance related to dft Microvision's motion for summary jgm [62-1] (dktclk) (Entered: 02/17/1999) |
| 03/01/1999 | 67 | ORDER by Judge Robert S. Lasnik adopting the REPORT AND RECOMMENDATION regarding dismissing pltf HoloDeck Trust as a party [65-1] (cc: counsel, DEW, Judge) (RS) (Entered: 03/02/1999) |
| 03/02/1999 | 68 | ORDER by Judge Robert S. Lasnik DENYING pltf's motion Rule 56(f) motion for a |

| | | |
|---|---|---|
| | | continuance related to dft Microvision's motion for summary jgm [62-1]; adopting the 1/5/99 and 1/14/99 reports and recommendations of Judge Wilson; dft Microvision's motion for summ jgm is GRANTED; dft Microvision is DISMISSED from this action (cc: counsel,DEW,Judge) (RS) (Entered: 03/02/1999) |
| 03/15/1999 | 69 | MOTION by plaintiff for reconsideration of order of summary judgment of 3/2/99 NOTED FOR 3/19/99 (VK) (Entered: 03/16/1999) |
| 03/16/1999 | 70 | Bill of costs; taxation due by 3/22/99 at 9:00 (assigned to Clerk Bruce Rifkin) by defendant Microvision NOTED FOR 3/22/99 (VK) (Entered: 03/17/1999) |
| 03/16/1999 | 71 | NOTICE OF APPLICATION FOR TAXATION OF COSTS AND DISBURSEMENTS by defendant Microvision (VK) (Entered: 03/17/1999) |
| 03/16/1999 | 72 | MEMORANDUM by defendant Microvision re Bill of costs; taxation due by 3/22/99 at 9:00 (assigned to Clerk Bruce Rifkin) [70-1] (VK) (Entered: 03/17/1999) |
| 03/29/1999 | 73 | MOTION by plaintiff for protective order NOTED FOR 4/16/99. Not noted-ltr sent (RS) (Entered: 03/31/1999) |
| 03/29/1999 | 74 | REQUEST by plaintiff for judicial notice of new evidence in further support of motion for reconsideration of order of summ jgm of 3/2/99 (RS) (Entered: 03/31/1999) |
| 04/02/1999 | 75 | COSTS taxed for defendant Microvision in the amount of $ 313.80 against plaintiffs Dennis J Solomon and Holodeck Trust (cc: counsel, Judge, Jgm. Book) (VK) (Entered: 04/02/1999) |
| 04/27/1999 | 76 | ORDER DENYING RECONSIDERATION by Judge Robert S. Lasnik DENYING motion for reconsideration of order of summary judgment of 3/2/99 [69-1] (cc: counsel, Judge) (VK) (Entered: 04/28/1999) |
| 04/29/1999 | 77 | MOTION by plaintiff Dennis J Solomon to appeal order taxing costs dated 4/2/99 NOTED FOR 5/14/99 (Not noted, ltr sent) (VK) (Entered: 05/04/1999) |
| 05/18/1999 | 78 | ORDER TO SHOW CAUSE by Magistrate Judge David E. Wilson - dfts' to show cause whether they oppose pltf's motion for protective order by 5/24/99; pltf's motion for protective order [73-1] RENOTED FOR 5/28/99 (cc: counsel, Judge) (VK) (Entered: 05/20/1999) |
| 05/21/1999 | 79 | REQUEST by plaintiff for admission to deft Joel Kollin (VK) (Entered: 05/24/1999) |
| 05/21/1999 | 80 | REQUEST by plaintiff for admission to deft Teledyne, Inc. (VK) (Entered: 05/24/1999) |
| 05/24/1999 | 81 | RESPONSE TO ORDER TO SHOW CAUSE by defendant MIT re: order [78-2] (VK) (Entered: 05/27/1999) |
| 05/24/1999 | 82 | AFFIDAVIT OF SERVICE by defendant MIT of response [81-1] (VK) (Entered: 05/27/1999) |
| 05/24/1999 | 83 | RESPONSE TO ORDER TO SHOW CAUSE by defendant Morris Weinberg re: order [78-2] (VK) (Entered: 05/27/1999) |
| 05/24/1999 | 84 | AFFIDAVIT OF SERVICE by defendant Morris Weinberg of response to order to show cause [83-1] (VK) (Entered: 05/27/1999) |
| 05/26/1999 | 85 | RESPONSE to order to show cause by defendant Joel Kollin, defendant University of WA, defendant Thomas Furness re: order [78-2] (VK) (Entered: 05/27/1999) |

| 05/26/1999 | 86 | DECLARATION of Paul J. Triesch by defendant Joel Kollin, defendant Thomas Furness, defendant University of WA re: response to order to show cause [85-1] (VK) (Entered: 05/27/1999) |
|---|---|---|
| 05/26/1999 | 87 | AFFIDAVIT OF SERVICE by defendant University of WA, defendant Joel Kollin, defendant Thomas Furness of response to order to show cause [85-1] etc. (VK) (Entered: 05/27/1999) |
| 05/27/1999 | 88 | NOTICE OF APPEAL by plaintiff Dennis J Solomon from Dist. Court decision [68-1 & 76] (cc: CCA, RSL, counsel) (JK) (Entered: 05/28/1999) |
| 05/27/1999 | | NO APPEAL FEE RECEIVED: Appellant Dennis J. Solomon NOT IFP @ USDC. (JK) (Entered: 05/28/1999) |
| 05/28/1999 | | CERTIFICATE OF RECORD Transmitted to USCA (cc: all counsel) (JK) (Entered: 05/28/1999) |
| 05/28/1999 | | APPEAL NOTIFICATION packet sent to CCA (cc: cnsl) (JK) (Entered: 05/28/1999) |
| 06/02/1999 | 89 | ORDER by Magistrate Judge David E. Wilson DENYING pltf's motion for protective order [73-1] for failure to serve all counsel (cc: counsel, DEW) (RS) (Entered: 06/02/1999) |
| 06/03/1999 | 90 | SUBSTITUTION OF COUNSEL on behalf of Microvision substituting atty Susan Fahringer for withdrawing atty Albert Gidari (RS) (Entered: 06/04/1999) |
| 06/03/1999 | 91 | AFFIDAVIT OF SERVICE by defendant of attorney [90-1] substitution (RS) (Entered: 06/04/1999) |
| 06/17/1999 | 92 | MOTION by plaintiff to proceed in forma pauperis NOTED FOR 7/2/99 (not noted, ltr sent) (VK) (Entered: 06/22/1999) |
| 06/17/1999 | 93 | MOTION by plaintiff for protective order NOTED FOR 7/2/99 (not noted, ltr sent) (VK) (Entered: 06/22/1999) |
| 06/17/1999 | | LODGED ORDER: re: pltf's motion for protective order [93-1] (VK) (Entered: 06/22/1999) |
| 06/25/1999 | 94 | RESPONSE by defendant University of WA, defendant Joel Kollin, defendant Thomas Furness to pltfs' motion for protective order [93-1] (VK) (Entered: 06/28/1999) |
| 06/25/1999 | 95 | AFFIDAVIT OF SERVICE by defendant University of WA, defendant Joel Kollin, defendant Thomas Furness of motion response [94-1] (VK) (Entered: 06/28/1999) |
| 06/25/1999 | 96 | RESPONSE by defendant Joel Kollin re: request [79-1] (VK) (Entered: 06/28/1999) |
| 06/25/1999 | 97 | AFFIDAVIT OF SERVICE by defendant Joel Kollin of response [96-1] (VK) (Entered: 06/28/1999) |
| 06/30/1999 | 98 | ORDER by Magistrate Judge David E. Wilson STRIKING pltf's motion to proceed in forma pauperis [92-1] as MOOT (cc: counsel, Judge) (VK) (Entered: 06/30/1999) |
| 07/06/1999 | 99 | REQUEST by plaintiff for admission to deft Morris Weinberg (VK) (Entered: 07/07/1999) |
| 07/15/1999 | 100 | ORDER by Magistrate Judge David E. Wilson GRANTING IN PART pltf's motion for protective order [93-1] (cc: counsel, DEW) (dktclk) (Entered: 07/16/1999) |
| 07/22/1999 | 101 | ORDER by Judge Robert S. Lasnik DENYING pltf's motion to appeal order taxing |

| | | costs dated 4/2/99 [77-1] (cc: counsel, Judge) (RS) (Entered: 07/23/1999) |
|---|---|---|
| 08/19/1999 | 102 | MOTION by defendant University of WA, defendant Joel Kollin, defendant Thomas Furness for summary judgment NOTED FOR 9/17/99 (RS) (Entered: 08/19/1999) |
| 08/19/1999 | 103 | MEMORANDUM by defendants in support of motion for summary judgment [102-1] (RS) (Entered: 08/19/1999) |
| 08/19/1999 | | LODGED ORDER: re: motion for summary judgment [102-1] (RS) (Entered: 08/19/1999) |
| 08/19/1999 | 104 | AFFIDAVIT OF SERVICE by defendant of motion for summary judgment [102-1] etc (RS) (Entered: 08/19/1999) |
| 08/20/1999 | 105 | NOTICE by defendant MIT of change of address (VK) (Entered: 08/26/1999) |
| 08/20/1999 | 106 | AFFIDAVIT OF SERVICE by defendant MIT of notice of change of address [105-1] (VK) (Entered: 08/26/1999) |
| 09/07/1999 | 107 | TIME SCHEDULE ORDER (CCA 99-35827) Appellant shall notify appellee of transcripts to be ordered by 6/7/99; appellee shall notify appellant of any additional transcripts needed by 6/16/99; appellant shall file transcript order form with the district court and make payment arrangements with court reporter by 6/28/99; Court reporter shall file transcript in the district court by 7/27/99; appellee's opening brf and excerpts of record shall be served and filed by 9/13/99; the brf of appellee shall be filed and served by 10/12/99. (dktclk) (Entered: 09/08/1999) |
| 09/10/1999 | 108 | MOTION by plaintiff to continue dfts' mtn for sum jgmt to conduct depositions delayed at the request of dfts NOTED FOR 10/1/99 (Mtn noting letter sent) (KERR) (Entered: 09/15/1999) |
| 09/10/1999 | 109 | RESPONSE (PRELIMINARY MEMO IN OPPOSITION) by plaintiff to motion for summary judgment [102-1] (Attachment) (KERR) (Entered: 09/15/1999) |
| 09/14/1999 | 110 | REPLY by defendant University of WA, defendant Joel Kollin, defendant Thomas Furness TO RESPONSE to their motion for summary judgment [102-1] (VK) (Entered: 09/16/1999) |
| 09/14/1999 | 111 | RESPONSE by defendant University of WA, defendant Joel Kollin, defendant Thomas Furness to pltf's motion to continue dfts' mtn for sum jgmt to conduct depositions delayed at the request of dfts [108-1] (VK) (Entered: 09/16/1999) |
| 09/14/1999 | 112 | AFFIDAVIT OF SERVICE by defendant University of WA, defendant Joel Kollin, defendant Thomas Furness of motion reply [110-1] etc. (VK) (Entered: 09/16/1999) |
| 09/15/1999 | 113 | RESPONSE by plaintiff to defts' motion for summary judgment [102-1] and request for telephonic argument (VK) (Entered: 09/17/1999) |
| 09/27/1999 | 114 | RESPONSE IN OPPOSITION by plaintiff Dennis J Solomon to defendants' motion to strike exhibits (MH) (Entered: 09/30/1999) |
| 09/27/1999 | 115 | SUPPLEMENTAL RESPONSE/MEMORANDUM IN OPPOSITION by plaintiff Dennis J Solomon to motion for summary judgment [102-1] (MH) (Entered: 09/30/1999) |
| 10/12/1999 | 117 | MANDATE (99-35827) from Circuit Court of Appeals DISMISSING the appeal [88-1]. On consideration whereof, it is now here ordered and adjudged by this court, that the appeal in this cause by, and herey is dismissed. (cc: RSL, all counsel) Order attached. (dktclk) (Entered: 10/15/1999) |

| 10/13/1999 | 116 | ORDER by Magistrate Judge David E. Wilson DENYING pltf's motion to continue dfts' mtn for sum jgmt to conduct depositions delayed at the request of dfts [108-1]; pltf's supplemental memo in opposition to defts' motion for summary judgment is STRICKEN as untimely (cc: counsel, DEW) (VK) (Entered: 10/14/1999) |
| 10/21/1999 | 118 | MOTION & Declarations by defendant University of WA, defendant Joel Kollin, defendant Thomas Furness to strike declarations & documents submitted by pltf in response to defts motion for summary judgment NOTED FOR 11/5/99 (dktclk) (Entered: 10/25/1999) |
| 10/21/1999 | | LODGED ORDER: re: motion to strike declarations & documents submitted by pltf in response to defts motion for summary judgment [118-1] (dktclk) (Entered: 10/25/1999) |
| 10/21/1999 | 119 | AFFIDAVIT OF SERVICE by defendant of motion to strike declarations & documents submitted by pltf in response to defts motion for summary judgment [118-1] (dktclk) (Entered: 10/25/1999) |
| 10/25/1999 | 120 | OBJECTIONS by plaintiff Dennis J Solomon to Magistrate's Order of 10/13/99 [116-1] (dktclk) (Entered: 10/25/1999) |
| 10/25/1999 | 121 | EXHIBITS re: objection [120-1] (dktclk) (Entered: 10/25/1999) |
| 10/25/1999 | 122 | REQUEST for admission to Deft MIT by plaintiff (VK) (Entered: 10/26/1999) |
| 11/01/1999 | 123 | RESPONSE by plaintiff in opposition to defts' motion to strike declarations & documents submitted by pltf in response to defts motion for summary judgment [118-1] (OA REQUESTED) (VK) (Entered: 11/03/1999) |
| 11/24/1999 | 124 | MOTION by defendant MIT for summary judgment NOTED FOR 12/17/99 (VK) (Entered: 11/30/1999) |
| 11/24/1999 | | LODGED ORDER: re: granting MIT's motion for summary judgment [124-1] (VK) (Entered: 11/30/1999) |
| 11/24/1999 | 125 | MOTION by defendant MIT to stay discovery NOTED FOR 12/10/99 (VK) (Entered: 11/30/1999) |
| 11/24/1999 | | LODGED ORDER: re: granting MIT's motion to stay discovery [125-1] (VK) (Entered: 11/30/1999) |
| 11/24/1999 | 126 | MOTION by defendant MIT to shorten time on motion to stay discovery [125-1] NOTED FOR 12/1/99 (VK) (Entered: 11/30/1999) |
| 11/24/1999 | 127 | AFFIDAVIT OF SERVICE by defendant MIT of motion for summary judgment [124-1] etc. (VK) (Entered: 11/30/1999) |
| 12/02/1999 | 128 | MINUTE ORDER: by Magistrate Judge David E. Wilson STRIKING deft MIT's motion to shorten time on motion to stay discovery [125-1] [126-1], NOTED FOR 12/10/99 deft MIT's motion to stay discovery (cc: counsel, Judge) (VK) (Entered: 12/03/1999) |
| 12/09/1999 | 129 | MOTION by defendant Morris Weinberg for summary judgment NOTED FOR 12/31/99 (KERR) (Entered: 12/13/1999) |
| 12/09/1999 | 130 | MEMORANDUM by defendant Morris Weinberg in support of motion for summary judgment [129-1] (KERR) (Entered: 12/13/1999) |
| 12/09/1999 | 131 | DECLARATION of Dr J Morris Weinberg by defendant Morris Weinberg in support |

| | | |
|---|---|---|
| | | of motion for summary judgment [129-1] (KERR) (Entered: 12/13/1999) |
| 12/09/1999 | 132 | DECLARATION of Maura Scott Blank by defendant Morris Weinberg in support of motion for summary judgment [129-1] (Exhibits A-D Attached) (KERR) (Entered: 12/13/1999) |
| 12/09/1999 | 133 | LODGING OF AUTHORITIES by defendant Morris Weinberg (KERR) (Entered: 12/13/1999) |
| 12/09/1999 | 134 | AFFIDAVIT OF SERVICE by defendant Morris Weinberg of motion for summary judgment [129-1], etc. (KERR) (Entered: 12/13/1999) |
| 12/13/1999 | 135 | RESPONSE by plaintiff to motion for summary judgment [124-1] (KERR) (Entered: 12/16/1999) |
| 12/17/1999 | 136 | ORDER by Magistrate Judge David E. Wilson GRANTING defts'' motion to strike declarations & documents submitted by pltf in response to defts motion for summary judgment [118-1], GRANTING MIT's motion to stay discovery [125-1], RENOTED FOR 12/31/99 motion for summary judgment [102-1], RENOTED FOR 12/31/99 motion for summary judgment [124-1], RENOTED FOR 12/31/99 motion for summary judgment [129-1], striking pltf's supplemental memo [121] as untimely counsel, Judge) (VK) (Entered: 12/20/1999) |
| 12/27/1999 | 148 | RESPONSE/memorandum in opposition by plaintiff to deft Weinberg's motion for summary judgment (OA REQUESTED)[129-1] (VK) (Entered: 02/10/2000) |
| 12/29/1999 | 137 | MOTION by defendant Morris Weinberg to strike NOTED FOR 1/14/00; not noted (RS) (Entered: 12/30/1999) |
| 12/29/1999 | 138 | MOTION by defendant Weinberg to shorten time on motion to strike [137-1] NOTED FOR 1/4/00 (RS) (Entered: 12/30/1999) |
| 12/29/1999 | 139 | AFFIDAVIT OF SERVICE by defendant Morris Weinberg of motion to strike [137-1] (RS) (Entered: 12/30/1999) |
| 12/30/1999 | 140 | REPLY by MIT TO RESPONSE to motion for summary judgment [124-1] (PV) (Entered: 12/30/1999) |
| 12/30/1999 | 141 | AFFIDAVIT OF SERVICE by defendant MIT of motion reply [140-1] (KERR) (Entered: 12/30/1999) |
| 12/30/1999 | 142 | REPLY by defendant Morris Weinberg TO RESPONSE to motion for summary judgment [129-1] (KERR) (Entered: 12/30/1999) |
| 01/04/2000 | 143 | MINUTE ORDER: by Magistrate Judge David E. Wilson GRANTING deft Weinberg's motion to shorten time on motion to strike [137-1] RENOTED FOR 1/6/00 deft Weinberg's motion to strike [137-1] (cc: counsel, Judge) (VK) (Entered: 01/04/2000) |
| 01/10/2000 | 144 | Appeal (Objection and Request for review) from Magistrate's Order [136-2] ( assigned to Judge Robert S. Lasnik) OA REQ'D by plaintiff NOTED FOR 1/28/00; incorrectly noted-ltr sent (RS) (Entered: 01/12/2000) |
| 01/10/2000 | 145 | MOTION by plaintiff for reconsideration of its opposition to dft MIT's motion to stay discovery OA REQ'D NOTED FOR 1/14/00; incorrectly noted (RS) (Entered: 01/12/2000) |
| 01/10/2000 | 146 | RESPONSE (OPPOSITION) by plaintiff to dft Weinberg's motion to shorten time of 12/29/99 (RS) (Entered: 01/12/2000) |

| 01/13/2000 | 147 | MEMORANDUM by plaintiff Dennis J Solomon in opposition to deft Weinberg's motion to strike exhibits [137-1] (MD) (Entered: 01/14/2000) |
|---|---|---|
| 02/15/2000 | 149 | REPORT AND RECOMMENDATION regarding MIT's motion for summary judgment [129-1], deft Weinberg's motion for summary judgment [124-1], defts UW, Kollin, & Furness' motion for summary judgment [102-1] by Magistrate Judge David E. Wilson NOTED FOR 3/3/00 (cc: counsel, Judge) (VK) (Entered: 02/15/2000) |
| 02/15/2000 | | LODGED ORDER: re: granting MIT's motion for summary judgment [129-1], deft Weinberg's motion for summary judgment [124-1], defts UW, Kollin, & Furness' motion for summary judgment [102-1] [149-1] (VK) (Entered: 02/15/2000) |
| 02/15/2000 | | LODGED JUDGMENT re: [149-1] adopting REPORT AND RECOMMENDATION regarding granting MIT's motion for judgment [129-1], deft Weinberg's motion for summary judgment [124-1], defts UW, Kollin, & Furness' motion for summary judgment [102-1] (VK) (Entered: 02/15/2000) |
| 02/15/2000 | 150 | ORDER by Magistrate Judge David E. Wilson DENYING pltf's motion for reconsideration of its opposition to dft MIT's motion stay discovery OA REQ'D [145-1], STRIKING deft Weinburg's motion to strike [137-1] as moot (cc: counsel, Judge) (VK) (Entered: 02/15/2000) |
| 02/18/2000 | 151 | ORDER by Judge Robert S. Lasnik DENYING pltf's appeal motion Appeal (Objection and Request for review) from Magistrate's Order [136-2] ( assigned to Judge Robert S. Lasnik) OA [144-1] (cc: counsel, Judge, DEW) (VK) (Entered: 02/18/2000) |
| 02/29/2000 | 152 | Appeal (Objection) from Magistrate's Order of 2/15/00 [150-1] OA REQ'D by plaintiff Dennis J Solomon NOTED FOR 3/17/00 (RS) (Entered: 03/01/2000) |
| 03/02/2000 | 153 | Objections to Report and Recommendation; OA Requested by plaintiff Dennis J Solomon NOTED FOR 3/17/00; not noted ltr sent (dktclk) (Entered: 03/07/2000) |
| 03/02/2000 | 154 | MOTION by plaintiff Dennis J Solomon for a continuance of the defendant's motion for summary judgment NOTED FOR 3/17/00; not noted ltr sent (dktclk) Modified on 03/07/2000 (Entered: 03/07/2000) |
| 03/07/2000 | 155 | RESPONSE by defendant University of WA, defendant Joel Kollin, defendant Thomas Furness to motion for a continuance of the defendant's motion for summary judgment [154-1] (KERR) (Entered: 03/08/2000) |
| 04/07/2000 | 156 | ORDER by Judge Robert S. Lasnik adopting report and recommendation; granting deft' motions for summary judgment; declining to exercise supplemental jurisdciton over pltf's state law claims; dismissing claims against defts Teledyne Imaging Technologies, Weidemier, Kennedy, and Hart; dismissing action with prejudice and denying pltf's motion for continuance (cc: counsel, Judge, GG) (VK) (Entered: 04/10/2000) |
| 04/13/2000 | 157 | JUDGMENT by Clerk Bruce Rifkin Report and Recommendation is adopted and approved. Defts University of Washington, Kollin, Furness, Weinberg, and MIT's motions for summary judgment re granted. The supplemental jurisdiction over pltf's state law claims are declined. Pltf's claims against defts TIT, Weidemier, Kennedy, and Hart are dismissed. This action is dismissed with prejudice (cc: counsel, Judge, Jgm. Book) Entered on: 4/14/00 (VK) (Entered: 04/14/2000) |
| 04/21/2000 | 158 | MOTION by plaintiff for extension of time for file a memorandum in support of reconsideration NOTED FOR 5/12/00 (not noted, ltr sent) (VK) Modified on |

| | | |
|---|---|---|
| | | 04/21/2000 (Entered: 04/21/2000) |
| 04/21/2000 | 161 | MOTION by plaintiff for reconsideration of orders (RS) (Entered: 05/18/2000) |
| 05/13/2000 | 159 | NOTICE OF APPEAL (00-35430) by plaintiff Dennis J Solomon from Dist. Court decision [156-1] (cc: CCA, RSL, counsel) (dktclk) Modified on 05/23/2000 (Entered: 05/15/2000) |
| 05/13/2000 | | NO APPEAL FEE RECEIVED: Appellant Dennis J. Solomon NOT IFP @ USDC. (dktclk) (Entered: 05/15/2000) |
| 05/15/2000 | | CERTIFICATE OF RECORD Transmitted to USCA (cc: all counsel) (dktclk) (Entered: 05/15/2000) |
| 05/15/2000 | | APPEAL NOTIFICATION packet sent to CCA (cc: cnsl) (dktclk) (Entered: 05/15/2000) |
| 05/15/2000 | 160 | NOTICE OF APPEAL (00-35431) by plaintiff Dennis J Solomon from Dist. Court decision [157-2] (cc: CCA, RSL, counsel) (dktclk) Modified on 09/12/2000 (Entered: 05/15/2000) |
| 05/15/2000 | | NO APPEAL FEE RECEIVED: Appellant Dennis J. Solomon NOT IFP @ USDC. (dktclk) (Entered: 05/15/2000) |
| 05/15/2000 | | CERTIFICATE OF RECORD Transmitted to USCA (cc: all counsel) (dktclk) (Entered: 05/15/2000) |
| 05/15/2000 | | APPEAL NOTIFICATION packet sent to CCA (cc: cnsl) (dktclk) (Entered: 05/15/2000) |
| 05/18/2000 | 162 | ORDER by Judge Robert S. Lasnik GRANTING pltf's motion for extension of time for file a memorandum in support of reconsideration [158-1]. Pltf's motion for reconsideration of orders [161-1] is noted for 6/2/00 (cc: counsel, Judge) (RS) (Entered: 05/18/2000) |
| 05/18/2000 | | NOTIFICATION by Circuit Court of Appellate Docket Number 00-35431 (Solomon) (dktclk) (Entered: 05/23/2000) |
| 05/18/2000 | 163 | TIME SCHEDULE ORDER (CCA 00-35431) Appellant's opening brf and excerpts of record shall be served and filed by 6/20/00; the brf of appellee shall be filed and served by 7/20/00. (dktclk) (Entered: 05/23/2000) |
| 05/18/2000 | | NOTIFICATION by Circuit Court of Appellate Docket Number 00-35430 (Solomon) (dktclk) (Entered: 05/23/2000) |
| 05/18/2000 | 164 | TIME SCHEDULE ORDER (CCA 00-35430) Appellant's opening brf and excerpts of record shall be served and filed by 6/20/00; the brf of appellee shall be filed and served by 7/20/00. (dktclk) (Entered: 05/23/2000) |
| 05/19/2000 | 165 | NOTICE by atty Paul T Meiklejohn of Dorsey & Whitney do not represent dft Altma Stage. (CL) (Entered: 05/23/2000) |
| 05/25/2000 | 166 | SUBSTITUTION OF COUNSEL on behalf of Morris Weinberg subst. atty Jeffrey Thomas terminating attorney Maura Scott Blank for Morris Weinberg (CL) (Entered: 06/02/2000) |
| 06/01/2000 | 167 | MOTION by plaintiff for reconsideration of orders & final judgment of the present case and voluntary recusal NOTED FOR 6/2/00 (VK) (Entered: 06/05/2000) |
| | | |

| | | |
|---|---|---|
| 06/07/2000 | 168 | ORDER by Judge Robert S. Lasnik DENYING pltf's motion for reconsideration of orders & final judgment of the present case and voluntary recusal [167-1] (cc: counsel, Judge) (VK) (Entered: 06/07/2000) |
| 06/17/2000 | 169 | ORDER (CCA 00-35430 and 00-35431) Within 14 days after entry of this order, appellant shall move for voluntary dismissal of appeal no. 00-35430 or show cause why it should not be dismissed as duplicative. The court's records reflect that the notices of appeal were filed during the pendency of a timely filed motion listed in FRAP 4(a)(4). The notices of appeal are therefore ineffective until entry of the order disposing of the last such mtn outstanding. Accordingly, the briefing schedule in this court shall be held in abeyance pending the district court's rcolution of the pending mtn. Within 7 days of the district court's ruling on the pending mtn, appellant shall notify this court in writing of the ruling and shall advise whether appellant intends to prosecute these appeals. (SH) (Entered: 06/19/2000) |
| 06/27/2000 | 170 | NOTICE OF APPEAL (00-35570) by plaintiff Dennis J Solomon from Dist. Court decision [168-1], [157-2] (cc: CCA, RSL, counsel) (SH) Modified on 07/11/2000 (Entered: 06/27/2000) |
| 06/27/2000 | | NO APPEAL FEE RECEIVED: Appellant not granted IFP at USDC. (SH) (Entered: 06/27/2000) |
| 06/27/2000 | | CERTIFICATE OF RECORD Transmitted to USCA (cc: all counsel) (SH) (Entered: 06/27/2000) |
| 06/27/2000 | | APPEAL NOTIFICATION packet sent to CCA (cc: cnsl) (SH) (Entered: 06/27/2000) |
| 07/06/2000 | 171 | DUPICATE NOTICE OF APPEAL by plaintiff Dennis J Solomon to appeal filed on 6/27/00. (SH) (Entered: 07/06/2000) |
| 07/10/2000 | | NOTIFICATION by Circuit Court of Appellate Docket Number 00-35570 (SH) (Entered: 07/11/2000) |
| 07/10/2000 | 172 | TIME SCHEDULE ORDER (CCA 00-35570) Appellant's opening brief and excerpts of record shall be served and filed by 8/8/00; brief of appellee shall be filed and served by 9/7/00. (SH) (Entered: 07/11/2000) |
| 07/17/2000 | 173 | SUBSTITUTION OF COUNSEL on behalf of MIT substituting Mary S. Petersen and terminating attorney Mary R DeYoung (KERR) (Entered: 07/19/2000) |
| 07/21/2000 | | APPEAL FEE RECEIVED (00-35431): fee in amount of $ 105.00 (Receipt 600005) (SH) Modified on 09/12/2000 (Entered: 07/25/2000) |
| 07/24/2000 | 174 | MANDATE from Circuit Court of Appeals (00-35430) is dismissed as duplicative of appeal no. 00-35431. The court, on its own motion, consolidates appeal nos. 00-35431 and 00-35570. A review of this ct's docket reflects that the filing and docketing fees for appeal nos. 00-35431 and 00-35570 remain due. Within 14 days after the date of this order, appellant shall pay to the district court the $105.00 filing and docketing fees for each appeal and file in this court proof of such payment or file in this court a mtn to proceed IFP. Failue to pay the fees or file a mtn to proceed IFP will result in automatic dismissal of the appeal by the Clerk for failure to prosecute. If appellant pays the fees as required, the following briefing scheulde shall govern these consolidated appeals: the consolidated openign brief will be due 8/30/00; the consolidated answering briefs will be due 9/29/00; and the optional consolidated reply brief will be due 14 days after service of the answering briefs. [159-1](cc:RSL, all counsel, jgm book) (SH) (Entered: 07/24/2000) |

| 08/26/2000 | 175 | MANDATE from Circuit Court of Appeals (00-35570) DISMISSING the appeal for failure to comply with the rules requiring processing the appeal to hearing. [171-1] (cc:RSL, all counsel) (SH) (Entered: 08/29/2000) |
| 06/19/2001 | | CLERK'S RECORD ON APPEAL transmitted to Circuit, 3 volumes (SA) (Entered: 06/19/2001) |
| 01/07/2002 | 176 | MANDATE (00-35431) from Circuit Court of Appeals AFFIRMING the decision of the District Court [160-1] (cc: all counsel, RSL, jgm bk) (SA) (Entered: 01/07/2002) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/14/2005 11:01:04 | | |
| PACER Login: | pd0005 | Client Code: | 17000-1 |
| Description: | Docket Report | Search Criteria: | 2:98-cv-00258-RSL |
| Billable Pages: | 10 | Cost: | 0.80 |