UNITED STATES DISTRICT COURT
DISTRICT OF EASTERN MASSACHUSETTS

DENNIS J. SOLOMON, Plaintiff

v.                                      Civil No: 04-12499WGY

CHARLES VEST,
et al., Defendants

**PLAINTIFF'S FIRST MOTION TO CORRECT & AMEND THE COMPLAINT**

The Plaintiff, Dennis J. Solomon, pro se, respectfully requests leave to correct and amend the complaint as follows:

    a. to correct the name of the defendant listed as "Ellis" to "Albert Ellis";

    b. To add Jeffrey Swope as a defendant;

    c. And to add

        Tyrex Group Ltd.
        2433 Rutland Dr., Suite 100
        Austin, Texas 78758
        512-615-4610
        FAX: 512-615-4615
        Andrew Cooper, President

        as a defendant; and,

    d. To insert the following averments:

1

DEFENDANT TYREX

208. During the summer and fall of 2004, Texas Instrument know that Solomon was preparing to present an operational prototype of our system to potential clients, but required a precision timing board made by ALPS of Germany - an authorized partner of TI bound by the NDA agreements.  To accomplish this goal, TI offered to upgrade the TI Discovery Board through Tyrex of Austin, TX. and required that I communicated my operational requirement to ALP.

209. On or about August 13, 2004, Becky Bell of Tyrex emailed a RMA number #1015 for the upgrade of Solomon's Discovery DMD system to be compatible with the ALPS USB board.

210. On or about August 14, 2004, Solomon sent the Discovery DMD system, having a value in excess of $10,000, to Tyrex, and received an email acknowledgement on August 23, 2004.

211. On or about September 1, 2004, Solomon received notice that the DMD mirror - a self-contained chip sold with most DLP projectors - was bad and it was being sent to Defendant Texas Instruments. Replacement is a simple processor requiring less than 15 minutes.

2

212. During the next three months, Solomon repeatedly requested the status from Tyrex and was told that it still at Texas Instruments. The last communication Solomon received was December 7, 2004.

213. Thereafter, Tyrex has refused to respond to Solomon's phone calls or correspondence.

214. By said acts, Texas Instruments and Tyrex conspired using the U.S. mails and interstate wires to steal and defraud Solomon of real property whose value was in excess of $10,000 as part of an ongoing conspiracy to interfere with interstate commerce, an enumerated felony under the civil "RICO" act.

215. By said acts, Texas Instruments, Tyrex, Actuality Systems, Weinberg and MIT conspired in an unlawful scheme to obtain trade secrets for a foreign entity, an enumerated felony under the civil "RICO" act.

216. By said acts, Texas Instruments, Tyrex, Actuality Systems, Weinberg and MIT conspired to interfere with Solomon's prospective business relations.

217. By said acts, Texas Instruments, Tyrex, Actuality Systems, Weinberg and MIT conspired to interfere with the fair competition for U.S. government grants and contracts.

DEFENDANT JEFFREY SWOPE

218. On or about September, 1999, Jeffrey Swope, representing MIT and Solomon discussed the resolution of a dispute regarding an MIT patent, incorporating Solomon's technology, licensed to Volumetric Imaging, Inc., a small close held corporation in which Solomon was the majority shareholder. Swope had promised to revive the patent as part of the settlement but, without explanation, after delaying for a considerable period of time, changed course and refused to act further.

219. Said refusal benefited Defendants Microvision, Favalora and Actuality, who were being promoted by Defendants MIT and Vest, as the original inventors of the respective technologies, and were engaged in developing prototype projects with Cree, Adam Weinberg and Reebok.

220. During the period from 1999 to the present, Swope knowingly and willfully advised, aided and abetted Defendants Vest, MIT, Actuality, Raytheon, and others in the promotion of the purloined technologies, and the false procurement of U.S. government contracts.

221. During the period from 1999 to the present, Swope knowingly and willfully libeled and slandered Solomon

4

by causing a report to the MIT Corporation directors to assert that Solomon was unreasonable and had no valid claim against MIT.

222. On or about February 15, 2005, Swope intentionally and maliciously slandered and libeled Solomon by communicating false information to administrators, faculty, and directors of MIT that Solomon was unresponsive and his claims were unfounded.

223. On or about February 25, 2005, Swope intentionally and maliciously slandered and libeled Solomon by communicating false information to administrators, faculty, and directors of MIT that Solomon refused to negotiate in good faith an offer to settle the dispute.

224. Documents filed by Swope with this Court between February 15 and 25, 2005 shows Swope intentionally and maliciously filed false and perjurious documents misrepresenting the Solomon's actions and falsely claiming that Swope negotiated in good faith.

225. On or February 25, 2005, Swope intentionally filed a false and perjurious affidavit with this Court claiming preparation on February 15, 2005 when in fact said document was not prepared on that date.

226. As a direct and proximate result of Swope's unlawful actions, Solomon has been damaged in the amount of at least $5,186,000.

Respectfully submitted on March 9, 2005.

Dennis J. Solomon
PO Box 289
Yarmouth Port, MA 02675
508 394 9221
djs.vest@citizenslaw.org

Exhibit 1: Affidavit of Solomon

CERTIFICATE OF SERVICE: I certify that I served a copy of this document upon the titled Defendant by first class or electronic mail as agreed by the parties on March 9, 2005.

---

DENNIS J. SOLOMON, Plaintiff

v.                                                    Civil No: 04-12499WGY

CHARLES VEST,
et al., Defendants

---

## AFFIDAVIT OF PLAINTIFF DENNIS J. SOLOMON

I, Dennis J. Solomon, of Yarmouth Port, MA., attest under penalties of perjury, that shortly after receiving a message from Mr. Swope on February 15, 2005, I placed a second call to the main number of Palmer and Dodge, 617-239-0100, and was directed by the secretary to Mr. Swope.

I asked if he was representing Chares Vest or MIT, and he stated that he was "representing MIT," and that Vest had "not been served."

I then stated that he (Swope) was obviously aware that while "you know, I feel Vest is a danger, I would be willing to dismiss against MIT if …[Swope interruption]"

Mr. Swope interrupted my sentence and said, "Goodbye, Mr. Solomon" and hung up.

Attest to on February 19, 2005

*[signature]*

7