UNITED STATES DISTRICT COURT
DISTRICT OF EASTERN MASSACHUSETTS

DENNIS J. SOLOMON, Plaintiff

v.                                                    Civil No: 04-12499WGY

CHARLES VEST,
et al., Defendants

## PLAINTIFF'S OPPOSITION TO DEFENDANT USC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICITION

The present complaint alleges that employees and agents of defendant University of Southern California. (hereinafter referred to as "USC"), are engaged in an ongoing effort to unfairly compete with the present and prospective business activities of the plaintiff, Dennis J. Solomon, by engaging in unlawful acts of interference with existing and prospective business relations, schemes to obtain trade secrets, false and misleading advertising, abuse of process and commercial disparagement. USC's unlawful acts have been intentional and knowingly crafted to cause deliberate harm to the plaintiff in the Commonwealth of Massachusetts. In furtherance of its unlawful scheme, USC employees and agents, including employed counsel, traveled into the Commonwealth in the year 2002, and used schemes to gain access to personal and confidential information maintained in the Commonwealth.

1

Thus, personal jurisdiction over USC, under the Massachusetts long-arm statute, is both proper, and represents the most economical application of judicial resources in the resolution of this dispute.

**1. Factual Background**

USC opposes personal jurisdiction, and by the sworn affidavit[1] of its senior vice president, Dennis Dougherty, would like this court to believe that it is a small, obscure school situated in provincial canyons of Los Angeles; - with so few contacts with the Commonwealth that sending "four academic counselors to Massachusetts for less than a week last fall"[2]. constitutes a representative act. This characterization is an affront to any reasonable person.

As is commonly known, USC is a prominent and competitive institution of international scope. While nominally an educational and football institution, the disappearance during the past three decades of the barrier between academics and industry, together with the growing importance of patent licensing and direct applied commercial research, has transformed USC, MIT and others into highly-competitive, commercial, research and development companies.

Despite having no product, prior commercial use, or pending application, defendant USC's willingness to hire one of the most prominent law firms in the nation and expend tens of thousands of dollars, simply to oppose the plaintiff's trademark application for a _stylized_ "HoloDeck", is not the act of an academic or education institution. Rather, it is as corrupt and bullying a commercial act as one might find in the

---

[1] USC Dougherty Affidavit, March 4, 2005
[2] ibid, Pg. 2 paragraph 8

2

"paper trail". For the purposes of this litigation, any assertion by USC of "protected status" as a "non-profit" or "educational" institution should be ignored.

USC's contact with the Commonwealth has been and is purposeful, competitive and commercial. As a research and development corporation, it is engaged in the continuous promotion, advertising and marketing of its products through an onslaught of international press releases, 'notice of meetings', lectures and research opportunities, intentionally emailed to a minimum of 100 persons in the Commonwealth each week. In its many fields, USC employees and agents are engaged in cooperative and competitive research with at least 50 persons in the Commonwealth, resulting in a minimum of 25 interstate communications per day using interstate wire and U.S mail. Extrapolating to a full year, one may conclude that USC, through its employees and agent, has at a minimum 10,000 meaningful commercial contacts per year with the Commonwealth.

USC also derives substantial income from the citizens of the Commonwealth through their purchase of licensed products, and other economic relationships.

Additionally, during the first important part of the relevant period of alleged tortuous activity, USC was registered as a foreign corporation in the Commonwealth having the address of 84 State St., Boston, MA.[3]

## 2. Legal Requirements for Personal Jurisdiction

It is well established that a party against whom a motion to dismiss under Fed. R. Civ. P. 12(b)(2) is filed bears the burden of proving the court's personal jurisdiction over the party challenging jurisdiction. *Foster-Miller, Inc. v. Babcock & Wolcox Canada*, 46

---

[3] USC Foreign Corporate Registration

F.3d 138, 145 (1st Cir. 3 1995). " In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995), quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir. 1994). Therefore, by application of Massachusetts substantive law, in order to satisfy its jurisdictional burden, Solomon must show that: (1) the assertion of jurisdiction is authorized under the Massachusetts long-arm statute; and (2) if authorized, the exercise of jurisdiction is consistent with basis due process requirements mandated by the United States Constitution. *Good Hope Industries, Inc. v. Ryder Scott, Co.*, 378 Mass. 1, 5-6 (1979).

The Massachusetts long-arm statute provides in relevant part that a non-resident defendant is subject to personal jurisdiction if: (1) the defendant directly or by an agent transacts business in the state; and (2) the plaintiff's claim arises out of that transaction of business. *G.L.c. 223A, § 3(a); Good Hope Industries, Inc.*, supra at 6. While the Massachusetts courts have broadly construed the phrase "transacting any business," the plaintiff still must prove purposeful conduct with Massachusetts residents or businesses or within Massachusetts. *See Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994); *Ross v. Ross*, 371 Mass. 439, 441 (1976). However where there is tortuous injury, jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state. *See Calder v. Jones*, 465 U.S. 783 (1984) (establishing an "effects test" for intentional action aimed at the forum state). Under *Calder*, personal jurisdiction can be based upon: "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of

4

which is suffered--and which the defendant knows is likely to be suffered--in the forum state." *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993).

It is clear that the complaint avers that the defendant USC "expressly aimed" and engaged in unlawful intentional acts causing harm in the Commonwealth.

### 3. Inconvenience of the Forum

Finally, regarding the argument of the inconvenience of litigation this action at a distance, it may be noted that prior to this action, defendant USC's trademark opposition was prosecuted by the principal trademark attorney of the outside law firm, Gibson, Dunn & Crutcher, from his offices in Denver, CO.

Additionally, to the extent that the complaint alleges an ongoing collusion between the defendants USC, Teledyne, Raytheon and Texas Instruments - all international corporations - adjudication in a single forum will reduce both time and costs.

The First Circuit recently indicated that "this factor [litigation at a distance] is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995) (finding that the burden was not satisfied simply in the need to travel from New York to Puerto Rico). In the present case, defendant does not allege anything "special or unusual" about its situation other than the ordinary inconvenience of litigating an action in another state.

With the adoption of digital communications, telephonic dispositions, and electronic service, the general nature of this action poses no special burden on USC.

5

In conclusion, the exercise of personal jurisdiction is both proper and most efficient for all parties.

REQUEST FOR ORAL HEARING.

Respectfully submitted on March 21, 2005.

Dennis J. Solomon
PO Box 289
Yarmouth Port, MA 02675
508 394 9221
djs.vest@citizenslaw.org


CERTIFICATE OF SERVICE: I certify that I served a copy of this document upon all the Defendants by first class or electronic mail as agreed by the parties on March 21, 2005.